LUELLA RAFUS *v.* D. K. DALEY.

February Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM, Supr. J.

Opinion filed May 5, 1931.

*Gelsie Monti* for the plaintiff.

*Loren S. Pierce* and *Webster E. Miller* for the defendant.

GRAHAM, Supr. J. This is an action of tort to recover damages for claimed personal injuries resulting from a collision of the defendant's' automobile with the automobile in which the plaintiff was riding as a guest passenger, and driven by her father, in the village of North Hartland, Vermont, on September 6, 1926. The cause was tried below at the September Term, 1929. The verdict was for the plaintiff to recover nominal damages, and the case is here on plaintiff's exceptions.

At the time of the accident, the plaintiff was fifteen years of age. She attained the age of eighteen years on November 28, 1928. The plaintiff's evidence tended to show that her mother conducted a laundry, and that the plaintiff, before the accident, helped her mother with the laundry work, and assisted to some extent with the housework in her parents' home; that as a result of the accident she sustained a nervous shock which undermined her health and from which she continued to suffer to the time of trial; and that her ability to do the kind of work which she had performed before the accident had been seriously impaired.

With the evidence standing thus, the plaintiff's mother a witness for the plaintiff, was asked on direct examination: "Q. If your daughter was doing the same sort of work during the summer, that she was during the summer of 1926, what would that be worth at the present time?" The Court sustained an objection to this question, and allowed the plaintiff an exception. The plaintiff then offered to show, "that if this young lady's capacity to work had not been interfered with by these injuries, that she would be capable of earning the sum of approximately $12 per week at the present time, and that she was able to earn that amount during the summer of 1926." The offer was excluded, and the plaintiff saved an exception. It is apparent from the record that the trial court ruled, as a matter of law, that the plaintiff was, and would continue to be, a minor until she arrived to the age of twenty-one years, and that her services until that time belonged to her parents, and were not recoverable by the plaintiff in this action. The plaintiff insisted that she reached her majority when she arrived to

the age of eighteen years, and that she was entitled to recover for any loss of time or decrease in her earning capacity after November 28, 1928.

This question requires an examination of the provisions of the Constitution and statutes respecting the age of majority of women in this State. Article 1 of Chapter 1 of the Constitution of this State, established in 1793, provided that: "* * * * No *male person* born in this country, or brought from over sea, ought to be holden by law, to serve any person as a servant, slave, or apprentice, after he arrives to the age of twenty-one years, nor *female,* in like manner, after she arrives to the age of *eighteen years,* unless they are bound by their own consent, after they arrive to such age, or bound by law for the payment of debts, damages, fines, costs, or the like." This article of the Constitution remained unchanged by amendment until amended by article 1, of section 1 of No. 153 of the Acts of 1923, and ratified by the people, pursuant to the provisions of that Act, on March 4, 1924. That amendment provides that : " * * * * *No person* born in this country, or brought from over sea, ought to be holden by law, to serve any person as a servant, slave or apprentice, after he arrives to the age of *twenty-one* years, unless he is bound by his own consent, after he arrives to such age, or bound by law for the payment of debts, damages, fines, costs, or the like."

That this article of the Constitution has reference to the age at which infants attain their majority in this State is not questioned. According to the English common law, the age of twenty-one is the period of majority for both sexes. 2 Kent's Comm. 233; 1 Blackstone's Comm. 463. But in *Young* v. *Davis* (1817), Brayt. 124, it is said: "A female of eighteen years of age, is of full age, under the Constitution and Laws of this State, for every purpose." In *Sparhawk* v. *Admr. of Buell* (1837), 9 Vt. 41, 78, 79, it is said: "But that section of the bill of rights in the Constitution of this State, which declares involuntary servitude illegal, and not allowable after males arrive at the age of twenty-one, and females at the age of eighteen years, has always been considered as fixing the age of majority of females at eighteen years. And after so long a time of silent acquiescence, on the part of the people, and of virtual judicial construction by all the courts of the State, before whom it has ever become important to determine the question, we should not

feel at liberty, now, to treat the question as open to discussion. Such construction of that section was contemporaneous with the adoption of the Constitution, and expressive of the sense of its framers, and, as we think, for very sufficient reasons." See, also, *Fitzgerald* v. *Connors* (1914), 88 Vt. 365, 367, 92 Atl. 456.

At the time of the opinion in the Sparhawk case there had been no legislative enactment affecting the question, and so the Court there considered only the question of the change of the common law by article 1 of the Bill of Rights. But by the Revised Statutes of 1839, chapter 65, § 1, it was provided: "Males of the age of twenty-one years, and females of the age of eighteen years, shall be considered of full age for all purposes; before those ages, they shall be considered minors." This statute has been continued unchanged in substance in all of the subsequent revisions and became section 28 of the General Laws of 1917. G. L. 28 was amended by No. 1 of the Acts of 1929 to read as follows: "Persons of the age of twenty-one years shall be considered of age, and, until they attain that age, shall be minors. Provided, however, that women of the age of eighteen years may marry without the consent of parent or guardian." It was also therein provided: "This act shall not apply to women becoming of age prior to the taking effect of this act."

Thus it appears that the effect of article 1 of chapter 1 of the Constitution of 1793 was to change the common-law age of majority of women from twenty-one to eighteen years. *Sparhawk* v. *Admr. of Buell, supra.* Section 1 of Chapter 65 of the Revised Statutes of 1839 was enacted in affirmance of the constitutional limitation, and the two provisions were continued without disparity until the constitutional amendment of 1924. The question is: Does the constitutional amendment definitely fix the period of majority of females at twenty-one years and so repeal the statute, as it existed from 1924 to 1929, fixing the lesser age of eighteen years; or does the constitutional amendment merely fix the maximum limitation of the power of the Legislature?

■ The constitution is not a grant of power to the Legislature, but it is a limitation of its general powers. *Thorpe* v *Rutland & B. R. Co.*, 27 Vt. 140, 62 A. D. 625. The Legislature's power is practically absolute, except for constitutional limita

tions. *City of Burlington* v. *Central Vermont Railway Co.*, 82 Vt. 5, 9, 71 Atl. 826; *Town of Bennington* v. *Park*, 50 Vt. 178, 191; *Thorpe* v. *Rutland & B. R. Co., supra.* Subject to constitutional restraints, the state legislatures have been compared to the British Parliament whose, "power and jurisdiction," according to Lord Coke, "is transcendent and absolute." *Thorpe* v. *Rutland & B. R. Co.*, 27 Vt. 140, 142, 143, 62 A. D. 625.

■ These fundamental and oft-quoted principles of law are applicable and controlling here, and we hold that the Legislature has the power to fix the period of majority at any age within the constitutional limitation of twenty-one years. The constitutional amendment and the statute here being considered are not in conflict, and so the latter was not repealed by the former. The constitutional provision prohibits action by the Legislature beyond the limitation imposed, but the statute is within that limitation and is not affected thereby. It follows that the plaintiff attained her majority when she arrived to the age of eighteen years, and she was entitled to recover in this action for any loss of time, or diminution of earning capacity after that time, which were proximately caused by the defendant's negligence.

■ The defendant questions the sufficiency of the plaintiff's offer to make its exclusion error, but we think that the ruling was such that counsel understood, and had a right to understand, that the whole subject of inquiry was precluded, and we therefore hold that the offer was sufficient, and that its exclusion was prejudicial error.

■■ The plaintiff urges that the error affects the question of damages only, and, for that reason, asks for a restricted reversal. The defendant's brief contains no reply or reference to this report. However, such a request is always addressed to the sound discretion of the Court. *Griffin* v. *Boston & Maine Railroad*, 87 Vt. 278, 295, 296, 89 Atl. 220; *Carpenter* v. *Central Vermont Ry. Co.*, 90 Vt. 35, 38-40, 96 Atl. 373; *Gaines* v. *Baldwin*, 92 Vt. 451-453, 104 Atl. 825; *Parizo* v. *Wilson et al.*, 101 Vt. 514, 522, 144 Atl. 856, 860. A new trial on all issues is to be granted where "this will best subserve the ends of justice" or where "the plain inference may be drawn that the verdict is the result of a compromise." *Parizo* v. *Wilson, supra*, and cases cited.

■

434

There was a conflict of evidence upon the question of liability. The defendant argues that the evidence warrants a finding by the jury that any substantial injuries to the plaintiff were proximately attributable to negligent acts of her father, the driver of the car in which the plaintiff was riding. After considering the case for several hours, the jury reported that they had taken five ballots and were unable to agree. They were returned by the court for further consideration of the case, and the verdict here questioned resulted.

We have reviewed the evidence, and we think that the ends of justice will be best served by ordering a retrial upon all issues.

In view of our disposition of the case, it is unnecessary to consider the plaintiff's motion to set aside the verdict.

*Judgment reversed, and cause remanded.*