IN RE DIANN BONFOEY COOKE.

January Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed February 6, 1945.

*Lawrence & O'Brien, Thomas L. Perkins* and *Robert B. Tyler* for the petitionee.

*Barber & Barber* and *Wilsie E. Brisbin* for the petitioner.

STURTEVANT, J.    This is a petition for a writ of habeas corpus by means of which the petitioner, James Negley Cooke, Jr. is seeking to obtain an order for the custody of the two minor children named therein. Ann Bonfoey Cooke and Laurina Wells are the petitionees. However, since Ann Bonfoey Cooke is the only one opposing the granting of the petition, she is hereinafter referred to as the petitionee.

The petitionee moved to dismiss the petition upon grounds stated in her motion and the case is here under the provisions of P. L. 2072 on petitionee's exceptions saved to the action of the court in denying her motion.

The petition is dated July 20, 1944, and among the facts alleged therein are the following material to the questions presented by the exceptions. James Negley Cooke, Jr. and Ann Bonfoey Cooke were married at Quincy, Illinois, May 2, 1931. Two children were born of that union, namely, Diann Bonfoey Cooke, now eleven years of age, and James Negley Cooke III, aged eight years. On October 8, 1941, the mother of these children obtained a divorce from their father, the petitioner in the case at bar, in the Court of Common Pleas, Summit County, in the State of Ohio. At the time of granting that divorce the Ohio court made an order committing the custody of the two above named minor children to their mother, with visitation periods to the father. At the time of the bringing of the petition in the case at bar the two children with their governess, Laurina Wells, were at the petitioner's home in

Brattleboro in this State. The petitioner has married again and now resides at Brattleboro and the petitionee is now a resident of this State, her home being at Stowe in the County of Lamoille. The presence of the children at the father's home when he brought his petition was in accordance with the terms of the decree issued by the Ohio court and a subsequent agreement between the father and mother, he thereby being privileged to have the children in his home during the first half of the summer of 1944. The petition is brought to the Windham County court by the petitioner as father and next friend of the children named therein.

The petition alleges that the mother of the children has instructed Laurina Wells, the children's governess, to remove them from the father's home on July 22, 1944, and with them meet the mother at some place outside Vermont, and from there all are to proceed to Miami, Florida, where Diann is to be entered in school. It is also charged that the mother is neglecting the education of these children, is attempting to poison their minds against their father and is neglecting their health, that of Diann in particular, and has failed to give them proper medical and dental attention. It also states that the mother is absent from home a great deal and has ceased giving the children her personal attention and relies solely upon a nurse or governess to supervise them, with the result that the children are not having the advantage of a parent's companionship, guidance and discipline, which the father is ready, willing and able to give them; that the children have arrived at an age when they should have parental supervision, affection and discipline which the mother does not give them because of outside activities and lack of interest in them. It is further alleged that for the reasons aforesaid, the mother has become incompetent to have the custody and control of these children and that to remove them from this State as the mother is about to do unless restrained from such action is contrary to law and against the best interests of said children.

The petition prays that a writ of habeas corpus issue against the mother and also against Laurina Wells, commanding that said children be forthwith brought before Windham County court to do and receive what said court shall then and there consider best concerning the children in this behalf, and also that a temporary order may issue restraining the mother and Laurina Wells, their agents and attorneys, from removing the children from the State

of Vermont, and permitting them to remain in the custody of their father until this case is heard upon the merits, and it also contains a prayer for general relief.

The petitionee contends that her motion to dismiss the petition should have been granted because the Ohio decree giving custody of the children to the mother is res adjudicata as to the issue presented by the petition and therefore such order must be given full faith and credit here. When the writ of habeas corpus is used not as a writ of liberty in the strict and original sense of the term but as a means of inquiring into the rights of conflicting claimants as to the custody of a minor child, it is generally held that the doctrine of res adjudicata will apply where no material change of circumstances is shown to have arisen since the prior adjudication. *Sheehy* v. *Sheehy,* et al., 88 NH 223, 186 A 1, 4, 107 ALR 635, and cases cited. The Ohio decree renders the question of custody res adjudicata as between the parents upon the facts as they existed on the date of the decree, that is, on May 2, 1941, but it has no binding, conclusive or even persuasive effects as to any events or changed conditions which may have occurred since that date. *Sheehy* v. *Sheehy,* et al., *supra,* and cases cited.

From the allegations contained in the petition as hereinbefore stated, it is clear that the petitioner bases his alleged right to the custody of these children upon conditions existing at the time of the bringing of his petition, that is, upon the change of conditions from those that existed at the time of the Ohio decree. This clearly appears from the petition, although it contains no specific allegation of changed conditions. From the foregoing it follows that the Ohio decree is not controlling in the case at bar. *Sheehy* v. *Sheehy, supra; Goldsmith, et al* v. *Salkey,* 131 Tex 139, 112 SW2d 165, 116 ALR 1293; *White* v. *White,* 214 Ind 405, 15 NE2d 86; also see annotations 20 ALR 815; 72 ALR 441; 116 ALR 1299.

That such is the law is not seriously questioned by the petitionee but she contends that from the allegations contained in the petition it does not appear to be based on any change of conditions since the date of the Ohio decree. As we have seen this contention is without merit.

We agree with the petitionee's contention that Vermont has no statute which specifically authorizes the use of a writ of habeas corpus to determine questions as to the custody of infants. P. L. 2025 to which the petitionee directs our attention is as follows:

> *"Prisoner entitled to.* A person imprisoned in a common jail, or the liberties thereof, or otherwise restrained of his liberty by an officer or other person, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and obtain relief therefrom if it is unlawful."

That this statute does not authorize the issuance of a writ of habeas corpus under the facts alleged in the petition in the case at bar as hereinbefore stated is self-evident. However, P. L. 1234 states:

> *"Common law adopted.* So much of the common law of England as is applicable to the local situation and circumstances and is not repugnant to the constitution or laws shall be law in this state and courts shall take notice thereof and govern themselves accordingly."

Because of the provisions of the last quoted statute, we come to the question, does the common law authorize the issuance of a writ of habeas corpus as sought in the petition before us and under the circumstances as therein stated?

In 1844 Judge Betts, then a judge of the Circuit Court of the United States for the Southern District of New York, in In the Matter of John A. Barry discusses and traces the history and use of the writ of habeas corpus at common law. It was held in that case that while at common law such writ furnished a proper method for the court to make inquiry as to the custody of infants, the federal courts in general and circuit courts in particular could not exercise the common law function of *parens patriae* and therefore had no jurisdiction to grant a writ of habeas corpus on the petition of a father to obtain custody of his minor daughter who was at the time living with her mother in New York City. Neither had such court jurisdiction to grant such writ by virtue of any statute of the United States. The opinion in the Barry case, as we shall see, has been adopted and approved by the United States Supreme Court and at the request of members of that court is printed as a note following the opinion in *In re Burrus, Petitioner,* 136 US 586, 597, 10 S Ct 850, 854, 34 L Ed 500. The above mentioned holding in the Barry case as to habeas corpus furnishing proper means for determining questions as to the custody of infants at

common law is to be found in "Note. In the Matter of Barry", *supra*. The holding that the federal courts are without authority to exercise the common law function of *parens patriae* is found in the above mentioned note where it is stated: "The jurisdiction of the United States courts depends exclusively on the Constitution and laws of the United States, and they can, neither in criminal nor civil cases, resort to the common law as a source of such jurisdiction." This holding is approved in *In re Burrus, Petitioner, supra*. The petitionee cites *In re Burrus, Petitioner,* which holds that a district court of the United States has no authority in law to issue a writ of habeas corpus to restore an infant to the custody of the father when unlawfully detained by its grandparents. However, in the opinion of that case at page 594 the court specifically approves the aforementioned holding in the Barry case as to lack of common law jurisdiction in the federal courts. That is, the decision in the Burrus case is based upon the fact that the United States district court was without authority to exercise the common law function of *parens patriae* and therefore had no jurisdiction over the matter nor had it jurisdiction by virtue of any statute of the United States. In the Burrus case at pages 593, 594, the court makes the following significant statement: "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States. As to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither the Congress of the United States nor any authority of the United States ·has any special jurisdiction. Whether the one or the other is entitled to the possession does not depend upon any act of Congress or any treaty of the United States or its Constitution."

There is no reason to doubt that originally the common law writ of habeas corpus was granted solely in cases of arrest and forcible imprisonment under color or claim of warrant of law. When such writ was first employed to place infants under the disposition of courts of law and equity is not important here. That in England the writ was used for such purpose before our Revolution is clearly established and the practice has been fully. confirmed in the continued assertion of the authority by those courts down to the present time. Whether the interposition of the court is demanded by the father or the mother of the infant is not material.

*New York Foundling Hospital, Apt.* v. *Gatti,* 203 US 429, 27 S Ct 53, 55, 51 L Ed 254, and cases cited. The authority to take cognizance of the detention of infants by private persons not held under claim or color of warrant of law rests solely in England on the common law. It is one of the eminent prerogatives of the crown, which implies in the monarch the guardianship of infants paramount to that of their natural parents. While this royal prerogative was at first exercised by the king it later devolved upon the high courts of equity and law, and allowing and enforcing the writ of habeas corpus to determine questions as to the custody of infants became vested as an elementary branch of the jurisdiction pertaining to such courts. The welfare of the child is the controlling factor in the determination of questions as to the custody of infants. In the exercise of this jurisdiction the court acts as *parens patriae. New York Foundling Hospital, Apt.* v. *Gatti,* 203 US 429, 27 S Ct at 55, 51 L Ed 254, and cases cited; 25 Am Jur p. 202, sec. 78, 79; 29 CJ p. 108, sec. 101; 39 CJS Habeas Corpus, sec 41.

When habeas corpus is granted to an adult the object is to inquire whether he is legally restrained of his liberty because if he is not he must be set free for the plain reason that by law he is entitled to his freedom. Such is not the object of the writ when brought to determine questions as to the custody of an infant because in law an infant is not entitled to his freedom. In such case the question of personal freedom is not involved except in the sense of a determination as to which custodian shall have charge of one not entitled to be freed from restraint, and in the determination of that question the court is guided solely by what it finds to be for the best interests of the infant under the circumstances of such case. *New York Foundling Hospital, Apt.* v. *Gatti,* 203 US 429, 27 S Ct at 55, 51 L Ed 254.

■ The provisions of the common law authorizing the use of the writ of habeas corpus to settle questions as to the custody of infants when applied to the facts alleged in the petition in the case at bar are not repugnant to our Constitution or to existing statutes in this State. From the foregoing it follows that the court's denial of the petitionee's motion to dismiss the petition for the writ of habeas corpus under the allegations contained in the petition in the case at bar is without error. *Judgment denying the motion to dismiss the petition is affirmed and cause remanded.*