### In re M. and G.

[321 A.2d 19]

No. 241-73

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed May 9, 1974

*Michael B. Clapp, Esq.,* of *Dinse, Allen & Erdmann,* Burlington, for Elizabeth Lund Home, Inc.

*McNamara, Fitzpatrick, Sylvester, Farrell & Maley,* Burlington, for the proposed adopting parents.

*James R. Flett, Esq.,* Vermont Legal Aid, Inc., St. Albans, for the natural mother.

*Richard A. Gadbois, Esq.,* St. Albans, for the natural father.

**Larrow, J.** On a *habeas corpus* petition brought to the Chittenden County Court by M., minor mother of an illegitimate infant, joined in by G., the admitted father, the trial court purported to set aside and vacate an order of the Chittenden Probate Court, dated March 7, 1973, terminating the parental rights of M. under 15 V.S.A. § 432. Both parents were unmarried. The trial court concluded that its action was required under *Stanley* v. *Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), for violation of the rights of an illegitimate father, and because no guardian *ad litem* had been appointed for M., then age sixteen, who signed the statutory relinquishment form with the required written assent of her own mother. Appellants here are Elizabeth Lund Home, Inc., a licensed child placing agency to whom the infant was relinquished, and the proposed adopting parents, intervenors below.

We are met at the outset by the claim of the appellees here that the appellants lack standing in this court because they have no right of appeal from the judgment of the county court. Briefly put, the argument is that *In re Fitts,* 124 Vt. 146, 197 A.2d 808 (1964), negated any right of appeal in *habeas corpus* cases; that the 1966 amendment to 12 V.S.A. § 3953 (No. 41 of the Public Acts of 1966) gave such right only to the petitioner or the state: and that, being neither

one, appellants can be in court only under V.R.A.P. 21, the requirements of which they have not met. We disagree.

*In re Fitts, supra,* is a lengthy and careful analysis of *habeas corpus* proceedings under 12 V.S.A. Chapter 143. It specifically held that an order thereunder discharging a petitioner from custody was not appealable by the state, that the chapter conferred no such right, and that 12 V.S.A. §§ 2382 and 2383 (now superseded by V.R.A.P. 3) merely regulated appeals where the right otherwise existed. The opinion does not treat of, or even refer to, the type of *habeas corpus* here involved, used under common law precedents to determine rights of custody.

*In re Cooke,* 114 Vt. 177, 41 A.2d 177 (1945), outlines the history and scope of this remedy, as distinct from the one conferred by statute, pointing out that in the exercise of this jurisdiction the court acts as *parens patriae.* This type of *habeas corpus* is not statutory, but a part of our common law heritage, adopted by virtue of 1 V.S.A. § 271. In this status, we hold the decision of the County Court to be reviewable here under 4 V.S.A. § 2(a) and V.R.A.P. 3.

In support of this holding, we note that *In re Cooke, supra,* and *In re Forslund,* 123 Vt. 341, 189 A.2d 537 (1963), came to this Court under then existing appellate procedure prior to the *Fitts* decision. *In re Baldwin,* 127 Vt. 7, 238 A.2d 656 (1967), came up on appeal after *Fitts.* Both *Cooke* and *Forslund* were appeals by petitionees below, as here. And, while the question of appellate jurisdiction was not expressly ruled on in any of these cases, they are at least indirect authority for our holding here; under *Stevens* v. *Wright,* 108 Vt. 359, 187 A. 518 (1936), where this court is without jurisdiction it acts on its own motion, and it did not so act in the cited cases.

■ The second question presented by this appeal is the availability of *habeas corpus* as a means of collateral attack upon the purported relinquishment of an infant under 15 V.S.A. § 432. Appellants argue that such relinquishment and the subsequent order terminating the natural mother's parental rights constitute a final and appealable order of the probate court, that such appeal is the appropriate remedy, and that *habeas corpus* is not a substitute for appeal. They cite

general language from several decisions to this effect. A review of these decisions, however, indicates that they did not involve the jurisdictional question here raised. Essentially, appellees' position here is that the probate court lacked jurisdiction to render its termination order, and that the order is void because no guardian *ad litem* was appointed for the natural mother. If the order is indeed void, we agree with appellees' contention.

> The writ is not intended to replace, in any way, regular proceedings in error, but lies to question the committing court's jurisdiction of the person and the subject matter, or its authority to render, under the circumstances of the case, the kind of judgment or order it did in fact make. *In re Greenough,* 116 Vt. 277, 282, 75 A.2d 569.

*In re Dobson,* 125 Vt. 165, 166, 212 A.2d 620 (1965).

Thus, the propriety of the remedy depends upon the questions of substantive law here involved. If the relinquishment and termination orders are void, *habeas corpus* is an appropriate method of collateral attack, since they operate to deprive the natural mother of custodial rights.

█ We are therefore brought to consideration of the substantive questions presented. Having determined that an appeal lies to this court, and that appellees have resorted to the appropriate remedy below if their contentions are correct, we come to the validity of those contentions.

We give our first attention to the claims of G., father of the infant here involved. Admitting paternity, he claims a violation of his rights under *Stanley* v. *Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972), and following cases. Joining generally in the claims of the mother, he also asserts that *Stanley* requires notice to him and opportunity to be heard before his parental rights can be terminated.

*Stanley* speaks of "dismemberment" of a family, and of the "substantial interest" in retaining custody of children. Neither of these considerations has relevance here, because the putative father has never had custody, and has never even pretended to assume the duties and responsibilities of fatherhood. Without prejudging the existence of possible abandonment, suffice it to say that this may well be an im-

portant fact for determination should future proceedings result.

Apart from this, it would appear that the putative father has struck too soon, insofar as he purports to invoke *habeas corpus* in his own behalf. He has not been deprived of custody, because he never had it, never asserted a right to it, and does not assert it now as superior to that of the natural mother. And there is nothing in the termination order entered by the probate court even purporting to terminate his rights; by its terms, the order confines itself to the parental rights of the natural mother. Absent a relinquishment or termination order with respect to his rights, he will, in the event of adoption, be in a position to assert his claims at the adoption hearing provided for by 15 V.S.A. § 441. *State ex rel. Lewis* v. *Lutheran Social Services*, 59 Wis.2d 1, 207 N.W.2d 826 (1973). True it is that that section provides for no notice to him as the natural father of a minor not born in lawful wedlock, unless the parents have intermarried and he has recognized the child and is contributing to its support. But, should adoption be decreed without notice to him in disregard of *Stanley* or, as provided by 15 V.S.A. § 435(1) or (2), without his consent, the constitutional issues suggested by *Stanley* may then be litigated. Unless and until such a situation arises any purported determination of these issues would be advisory, and is precluded. *In re Constitutionality of House Bill 88*, 115 Vt. 524, 64 A.2d 169 (1949).

 M. herself stands in a different position, in that the order terminating her rights was in fact made by the probate court, based upon the relinquishment executed by herself and her mother. This order she asserts is void because she was then sixteen and no guardian *ad litem* was appointed for her. She further claims that her mother not only was not so appointed, but could not have been, or have acted as such, because of her conflicting interests.

On the specific facts of the case, the county court would seem to have resolved the question of conflicting interests against the appellee. The question was not an easy one, because the record is replete with numerous instances of admitted perjury and changed testimony. But the question was faced and determined, and a careful review of the transcript

indicates that the findings of fact, insofar as based upon the evidence, are well within the "clearly erroneous" test of V.R.C.P. 52(a).

The appellee mother filed extensive requests for findings, which included numerous requests for findings as to specific instances of conflicting interest. Request No. 69 was for a finding of general adverse interest at all material times. None of these requests was granted. On the contrary, the factual picture found by the court was one of discussions between M. and her mother throughout the pregnancy, an understanding by each of the consequences of relinquishment and a willingness to place the child for adoption on the part of M., a change of mind by M. not occurring until some two months after the relinquishment and an absence of any fraud, duress, coercion or undue influence to persuade her to relinquish the child for adoption.

The only finding below tending to support the existence of a conflict of interest is found in the first two sentences of Finding No. 48, which appears under "Conclusions of Law." These sentences, which precede the specific factual finding of no fraud, duress, coercion or undue influence, read:

> 48. Because of the nature of the circumstances and their relationship, the interests of a mother and her pregnant unmarried sixteen-year-old daughter necessarily conflict. To conclude otherwise is to ignore a fact of life.

Whether treated as a conclusion, or as a matter of judicial notice, this "Finding" cannot operate to contradict the specific facts found. It is not an appropriate subject of judicial notice. *Siebert* v. *Siebert*, 124 Vt. 187, 200 A.2d 258 (1964). And as a conclusion it contravenes the legislative policy permitting a mother to approve the relinquishment of an infant by her minor child. 15 V.S.A. § 432(b).

While there is no conflict of interest, here found to be the case, the rule of disqualification most recently expressed by this Court in *Dartmouth Savings Bank* v. *Schoen's Estate*, 129 Vt. 315, 276 A.2d 637 (1971), has no application. There being no conflict of interest, the consent given by M.'s mother must be deemed to be effective, unless there is an absolute requirement, applicable to this proceeding, for the appointment of a guardian *ad litem*.

The thrust of appellee's argument on this point is clear. In her brief she states that it would appear to be the law of this state that where no guardian *ad litem* is appointed to represent a minor, in a proceeding where the interests of the minor are at stake, the order resulting from such proceeding is invalid. We do not agree that the law can be so sweepingly stated.

While it is the general rule that infancy connotes a legal disability requiring the appointment of a guardian *ad litem* to give force and effect to an adjudication involving a minor (*Pettengill* v. *Gilman*, 126 Vt. 387, 232 A.2d 773 (1967)), the rule is not general; it is replete with exceptions, both common law and statutory. The question here involved is the capacity of the infant to consent to the relinquishment of her child, and the general principle is that the legislature may fix the time at which persons become competent to do any act or perform any duty. *Re Morrissey,* 137 U.S. 157, 34 L.Ed. 644, 11 S.Ct. 57 (1890). 42 Am.Jur.2d *Infants* § 4. The law recognizes the progressive capacity of an infant to do acts involving legal consequences as his age increases. 42 Am.Jur.2d *Infants* § 9. Vermont law recognizes many such instances. Thus, (1) a minor is liable for necessaries (*Russell* v. *Barre Plywood Co.,* 116 Vt. 40, 68 A.2d 691 (1949)), (2) may make and effectively withdraw bank deposits (8 V.S.A. § 911), (3) may be liable on a mortgage loan, if married, on a home, below the then age of majority (8 V.S.A. §§ 1258, 1842(b)), (4) may consent to medical treatment and hospitalization for drugs or venereal disease if over age 12 (18 V.S.A. § 4351), (5) if a female over sixteen, may secure a marriage license if there is no parent or guardian competent to act, or, if there is, with the consent of only one parent (18 V.S.A. § 5142(1)), (6) may bring and prosecute a divorce action without a guardian *ad litem* (V.R.C.P. 80(b)), (7) may be bound by one parent only in releasing a claim under $500.00 (14 V.S.A. § 2643), (8) may make a choice of guardian at age 14 (14 V.S.A. § 2652), and (9) if over 14, may petition the court for removal of a property custodian under the Uniform Gifts to Minors Act (14 V.S.A. § 3207(d)).

In the case of the adoption statute, the legislature has seen fit to recognize such progressive capacity by authorizing a minor under age eighteen to waive notice of the relinquish-

ment hearing with the concurrence of one parent or of a guardian. 15 V.S.A. § 432(b). It has also authorized consent to an adoption to be given by a minor parent, if of sufficient judgment and discretion to act for the best interests of the child to be adopted. 15 V.S.A. § 435(8). We conclude that the legislature, in formulating the adoption statute, has merely recognized another instance of the progressive capacity of an infant, and has permitted a minor parent to act in the manner therein prescribed, without the necessity of a guardian *ad litem*. *In re Camp,* 94 Vt. 455, 111 A. 565 (1920). The consent of a parent or guardian is required only for waiver of notice of the relinquishment hearing, and the consent of both parents (of the minor parent) to the eventual adoption is required, unless otherwise provided, except where the probate court finds the minor to be of the judgment and discretion therein described.

We therefore hold that there is no requirement for the appointment of a guardian *ad litem* in the proceedings before the probate court, the legislature having recognized the capacity of a minor parent to act with the consents therein provided. *Rafus* v. *Daley,* 103 Vt. 426, 432, 154 A. 695 (1931); *Austin* v. *Collins,* 200 S.W.2d 666 (Tex. Civ. App. 1947). We do not reach the question of whether one would have been required had there been a showing of conflict of interest, since none appears. Absent fraud, duress, coercion, or undue influence exerted upon the natural mother, the order of termination made by the Chittenden Probate Court under date of March 7, 1973, and unappealed from, is in full force and effect. By the terms of the statute, the relinquishment therein approved may not be withdrawn. 15 V.S.A. § 432 (b).

In reaching this conclusion, we have not overlooked *Bancroft* v. *Heirs of Bancroft,* 53 Vt. 9 (1880). Accepted on its face, it is a holding that the guardian of a minor may consent to the minor's adoption by himself, both for himself and for the minor, without conflict of interest. On its facts, it is a holding that the adopted minor shares in the parent's estate, over the objections of other heirs. On the facts, the result is supportable on grounds of estoppel, leaving open the possibility of a contrary result had the adopted minor sought to set aside the adoption. The holding of competence to act in

both capacities we regard as contrary to *Dartmouth Savings Bank, supra,* and overruled by it. We do not rest our decision here on *Bancroft.*

*The judgment of the Chittenden County Court is reversed, and the petition for writ of habeas corpus is dismissed.*