481 A.2d 1037 (1984)
In re T.L.S. and M.J.C.
No. 82-439.
Supreme Court of Vermont.
June 15, 1984.
*1038 John J. Easton, Jr., Atty. Gen., and Elizabeth Grant Rome and Herbert W. Olson, Asst. Attys. Gen., Montpelier, for plaintiff-appellee.
William E. Dakin, Jr., and John C. Holme, Jr., Chester, for defendant-appellant J.B. (mother).
John J. Boylan, III, and Scott A. Whitted of Kiel & Boylan, Springfield, for defendant-appellant L.B. (stepfather).
Before BILLINGS, C.J., and HILL, UNDERWOOD, PECK and GIBSON, JJ.
PECK, Justice.
The mother and stepfather of M.J.C. and T.L.S. appeal an order by the Vermont *1039 District Court transferring legal custody and guardianship of the children to the Commissioner of Social and Rehabilitation Services (S.R.S.). Appellants claim that the court's findings and conclusions were not supported by the evidence. They also contend that the court erred in failing to disqualify the presiding judge, in receiving evidence in derogation of the physician-patient privilege, and in failing to consider alternative dispositions of the parents' custodial rights. The State cross-appealed the court's refusal to terminate the mother's residual parental rights in the children.
The procedural history of this case began in 1978 with a petition filed by the Windsor County State's Attorney alleging that M.J.C. and T.L.S. were children in need of care and supervision. Hearings were held by the court below, after which it was determined that the children were without necessary parental care. Thereupon the court transferred custody of the children to S.R.S. with residual rights remaining in the mother. Both the mother, J.B., and the stepfather, L.B., appealed.
This Court vacated the order of the district court because the court had improperly ordered a psychiatric examination of the mother and had relied on the report of the examination in its findings. In re T.L.S. & M.J.C., 139 Vt. 197, 199, 425 A.2d 96, 97 (1980). The case was then remanded for further proceedings. Id.
After remand, the Attorney General entered his appearance on behalf of the State and filed a new petition based on new facts. Proceedings on the remanded case and the new petition were consolidated for trial. Prior to the hearings on the merits, the stepfather moved for recusal of the presiding judge because he had also heard the 1980 case and had, therefore, considered the improper evidence that resulted in reversal. The motion was denied. On July 8, 1981, a detention hearing was held, after which custody of the children was transferred to S.R.S. pending resolution of the case.
After hearings on the merits held on July 27 and September 18, 1981, the court made numerous findings and concluded that the children were in need of care and supervision in an order dated October 23, 1981. Disposition hearings were held on December 15, 1981, and February 4, 1982. On March 15, 1982, the court issued additional findings based on the disposition hearings, and transferred custody of both children to S.R.S. Because of lack of notice to the putative fathers of both M.J.C. and T.L.S., however, the court refused to terminate the mother's residual rights. The mother and stepfather appealed again, and the State filed a cross-appeal.
Both the mother's and stepfather's appeals were consolidated for hearing. The children did not join in the appeal.
The parents claim first that the findings and conclusions of both the October, 1981, and March, 1982, orders were not supported by the evidence. Appellants' specific challenges center on either the claimed absence of supportive evidence, or on evidence they characterize as clearly contradictory. We find no merit to this argument.
V.R.C.P. 52(a)'s "clearly erroneous" standard for appellate review of findings has been adopted in juvenile cases. See In re L.R.R., 143 Vt. 560, 563, 469 A.2d 1173, 1175 (1983). Accordingly, findings will stand if there is any credible evidence that supports them. Id. The court made numerous detailed findings which brought this case within the ambit of the statute defining "child in need of care or supervision," 33 V.S.A. § 632(a)(12), as it was required to do. In re R.H., 138 Vt. 425, 427, 415 A.2d 1318, 1320 (1980); In re J.M., 131 Vt. 604, 608, 313 A.2d 30, 32 (1973). A review of the record convinces us that there is ample support for the court's findings and conclusions.
The evidence adduced at the various hearings below discloses that throughout the lives of the two children, the mother has shown a complete inability to cope with *1040 the stress of parenting. Her tendency has been to react to that stress with abusive and neglectful conduct toward the children. She applied a commercial cleanser to the body of M.J.C. when he was an infant and, later, threatened to throw him from a second-story porch. She also admitted to the stepfather that she had tried to strangle M.J.C. When he was only three years old, M.J.C. told a social worker that he had been punched and kicked by his mother. On another occasion, that same social worker witnessed the mother shove a small bassinet containing the infant T.L.S. against a couch, and then remove T.L.S. by one leg and carry her in that manner into another room. After returning home from school one day when he was six years old, M.J.C. was struck on the mouth by his mother, causing a significant bruise to his jaw. In the same episode, the mother also banged his head against the wall and threw him to the floor.
Throughout the period of these events, the mother suffered from serious mental and emotional problems. S.R.S. has offered her mental health treatment as well as parental and marriage counselling. Her cooperation with these efforts, however, has been either infrequent or inadequate. At various times she has asked to have the children removed, and has contemplated offering them for adoption.
There is no indication that the children have ever been mistreated by the stepfather. However, he has been unable to control the mother's violent behaviour or prevent harm to the children. He has also been unable to provide a stable and caring atmosphere in the presence of the mother. As a result the children have been placed in a foster home.
In sum, while testimony of the parties and various other witnesses may conflict, there is adequate evidence to support the findings. Consequently, there is sufficient support for the court's conclusion that the children are in need of care and supervision. We find no error.
Appellants contend next that the presiding judge below erred in refusing to recuse himself from the proceedings after remand of the earlier case. They argue that the judge was biased against them because he had heard inadmissible evidence in the previous proceedings.
The Vermont Code of Judicial Conduct counsels that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where... he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...." Code of Judicial Conduct, Canon 3 C(1)(a), 12 V.S.A.App. VIII, A.O. 10.
When partiality is claimed because of personal bias, such bias or prejudice must be affirmatively shown by the party moving for recusal. State v. Ahearn, 137 Vt. 253, 271, 403 A.2d 696, 707 (1979); State v. Beshaw, 134 Vt. 347, 351, 359 A.2d 654, 656 (1976); In re Shuttle, 131 Vt. 457, 461, 306 A.2d 667, 670 (1973). In State v. Beshaw, supra, this Court found no showing of personal bias where the evidence showed only that the trial judge had earlier found the defendant guilty of contempt resulting from an assault on the judge. 134 Vt. at 351, 359 A.2d at 657. Although the presiding judge in the instant case had seen inadmissible evidence from the previous hearings in the matter, appellants make no showing that this resulted in personal prejudice directed toward them. See United States v. Lyon, 588 F.2d 581, 583 (8th Cir.1978), cert. denied, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 381 (1979) (absent showing of prejudice, fact that judge was aware of inadmissible evidence after remand did not require recusal).
At the hearing on appellant L.B.'s motion for recusal, the presiding judge stated that:
As a practical matter, this case was heard about three years ago and in the intervening time, the Court has heard hundreds of cases and ... [my] ... memory *1041 does not retain nearly as much as you're fearful that it will retain. However, in the interests of caution, ... I'll make an Order at this point to have the court clerk separate out any documentary evidence ... [objected to by the Supreme Court] ... so that it will be sealed and not available to the Court to review. I have not opened that file since its return.
Appellants made no showing that the presiding judge's conduct during trial or his findings were affected by the prior inadmissible evidence, nor is there any evidence to that effect in the record.
Any claim by appellants of bias based on personal knowledge of disputed facts, Canon 3 C(1)(a), supra, must also fail. A motion for recusal may not ordinarily be based simply on the judge's participation in earlier proceedings regarding the same case. Weber v. Garza, 570 F.2d 511, 512 n. 1 (5th Cir.1978); Deahl v. Winchester Department of Social Services, 224 Va. 664, 672-73, 299 S.E.2d 863, 867 (1983) (no recusal required merely because judge presided at earlier custody hearing in same case). Federal courts interpreting 28 U.S.C. § 455(b)(1), which is nearly identical to Canon 3 C(1)(a), supra, have held that the personal knowledge of disputed facts must be extrajudicial; i.e., obtained from sources outside the judge's mere participation in the case. United States v. Kelley, 712 F.2d 884, 889-90 (1st Cir.1983); United States v. Phillips, 664 F.2d 971, 1002 (5th Cir.1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, cert. denied (following a second petition), 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). We agree with this interpretation, and adopt it today. Applying this standard to the case at bar, no such showing has been made. Accordingly, no error appears.
Appellants also contend that the court erred in admitting the testimony of two witnesses for the State in violation of the mother's physician-patient privilege. 12 V.S.A. § 1612. At the outset, we note that appellants have a two-step burden of proving "first, that the privilege exists, and second, that the material sought to be protected was in fact privileged." State v. Sweet, 142 Vt. 238, 239, 453 A.2d 1131, 1132 (1982).
A mental health services counselor who had worked with the mother testified as to information gleaned from those counseling sessions. Under the present 12 V.S.A. § 1612(a), that information would unquestionably have been privileged.[1] However, at the time of the hearings at which he testified, July 27, 1981, the following version of § 1612 was in effect:
§ 1612. Patients' privilege
(a) Confidential information privileged. Unless the patient waives the privilege or unless the privilege is waived by an express provision of law, a person authorized to practice medicine or dentistry, or a registered professional or licensed practical nurse, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.
By its terms, the original § 1612 did not include mental health professionals. The version of § 1612 appellants wish to apply in this case was added by amendment by 1981, No. 221 (Adj.Sess.), § 1, and became effective on July 1, 1982.
*1042 Appellants cite Mattison v. Poulen, 134 Vt. 158, 160-61, 353 A.2d 327, 329 (1976), for the proposition that the amended § 1612 should be applied retroactively to the caseworker's testimony. Mattison held that the original § 1612, added in 1973 by No. 190 (Adj.Sess.), § 1, effective July 1, 1974, fell within the competency-of-witnesses exception to 1 V.S.A. § 213, the statute that bars retroactive application of certain new statutes. However, 1 V.S.A. § 213 and its exceptions are intended to apply to newly added legislative enactments only. See Murray v. Mattison, 63 Vt. 479, 480, 21 A. 532, 532 (1891). When faced with an amendment to a statute, we must turn to 1 V.S.A. § 214, which provides in part:
(b) The amendment or repeal of an act or statutory provision ... shall not:
(1) Affect the operation of the act or provision prior to the effective date of the amendment or repeal thereof;
(2) Affect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal; ....
See Stewart v. Darrow, 141 Vt. 248, 253, 448 A.2d 788, 789 (1982); Capron v. Romeyn, 137 Vt. 553, 555, 409 A.2d 565, 566-67 (1979). Accordingly, the amended § 1612, supra, cannot be applied retroactively.
In determining whether the caseworker's testimony was privileged, we must look to the 1974 version of § 1612, supra. Since the caseworker was not within the classes of individuals listed in that statute, we find that 12 V.S.A. § 1612 as it existed at the time of the hearing was no bar to his testimony. Accordingly, the court did not err in allowing the testimony into evidence.
We also find no breach of the physician-patient privilege in regard to testimony by the children's psychologist as to the mother's psychological condition. The psychologist was not the mother's treating physician.[2] While he had seen the mother once in a professional capacity several years before the hearings below, he neither based his opinions on that contact nor on information from other professionals who were currently treating the mother. In each instance where the psychologist's opinion was elicited by the State, it was made in response to a question carefully phrased so as to limit the basis of the opinion to "[his] personal observations in a non-professional capacity [namely, the times when the mother accompanied the children to their treatment sessions] as well as the information that [he had] heard in trial...." Such an opinion is permissible under 12 V.S.A. § 1643, and did not operate to compromise the mother's privileged information in this case. The witness was put on notice several times that his testimony must be limited accordingly. There is no indication in the record that he strayed from that course.
The last claim raised by appellants is that the court erred in failing to consider less drastic alternatives to placing the children in a foster home. However, as the State points out, in making this claim appellants misapprehend the disposition ordered by the court. The order below merely transferred legal custody and guardianship of the children to S.R.S. It made no provision for the specific placement of the children. In fact, the court had no authority to do so. In re G.F., 142 Vt. 273, 282, 455 A.2d 805, 809 (1982).
We have already determined that the court's findings were sufficient to support the conclusion that M.J.C. and T.L.S. were children in need of care and supervision under 33 V.S.A. § 632(a)(12). Once that determination is made, the court may proceed under 33 V.S.A. § 656(a) in the disposition of the child. Section 656(a)(3)(A) enables the court to transfer legal custody and guardianship of the child *1043 to the Commissioner of S.R.S., as was done in this case. When legal custody has been transferred to S.R.S., it alone has the authority to decide among potential placement alternatives for the child, subject to the approval of the juvenile court. In re G.F., supra, at 280-81, 455 A.2d at 809.
Of course, for the court to justify separation of the child from the parents in the dispositional phase of the proceedings, it must demonstrate that the separation is necessary for the child's welfare or in the interests of public safety. 33 V.S.A. § 631(a)(3); In re N.H., 135 Vt. 230, 236, 373 A.2d 851, 856 (1977). To do so, the court must consider the relative merits of allowing the child to remain with the parents. In re N.H., supra, at 237, 373 A.2d at 856.
Most of the alternatives appellants suggest involve their continued custody of the children, which has already been demonstrated to be unworkable. Appellant L.B., the stepfather, also suggests that he is willing to live separately from the mother if necessary, and cites In re N.H., supra, as a controlling example. In N.H., we vacated a disposition order that failed to grant custody of a child to its father where there was no showing that he was an unfit parent. Id. at 237, 373 A.2d at 856-57. However, the father in N.H. was already separated from the mother and divorce proceedings were underway. In addition, he was residing with his parents, and both he and they were ready and able to provide his child with a loving, stable and secure environment. The stepfather in this case has made no such showing.
There is no indication in the record that the stepfather actually intended to separate from the mother. On the contrary, his goal was to maintain the family as a whole. However, the evidence at the hearings showed that he was unable to provide secure surroundings for the children in the mother's presence. He had also tried to conceal at least one instance of her abusive behaviour from the authorities. Therefore, the facts of N.H. are distinguishable from the present case, and the result appellant suggests is not justified.
The last issue we address was raised by the State's cross-appeal. The State maintains that the court erred in its disposition order by refusing to terminate the mother's residual parental rights.
At the disposition hearing, the State sought to have the guardianship and custody of the children transferred to S.R.S. without limitation as to adoption. After careful consideration of the factors required in determining the best interests of the children, 33 V.S.A. § 667; In re E.G., 139 Vt. 171, 423 A.2d 1197 (1980), and parental rights, In re D.R., 136 Vt. 478, 392 A.2d 951 (1978), the court concluded that the mother's residual parental rights should be terminated. Our review of the record satisfies us that this view was justified.
Notwithstanding the above conclusion, the hearing court reluctantly declined to sever the mother's residual rights on the grounds that no notice of the proceedings had been given to the putative fathers of the children, relying on Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The State moved the court to amend the order and submitted additional information about the fathers. The court denied the motion because of its concern that the fathers would be barred by 15 V.S.A. § 441[3] from receiving notice of any future adoption proceedings. The judge expressed his opinion that reliance on § 441 by a probate court in subsequent adoption proceedings would violate the father's constitutional rights as defined in Stanley, supra. Accordingly, the court concluded that notice had to be given to the fathers of *1044 the mother's termination hearing if the Stanley requirements were to be met. For the reasons set forth below, we hold there is no requirement that the protection guaranteed to putative fathers by Stanley had to be satisfied at the hearing on the termination of the mother's rights.
In Stanley, the United States Supreme Court struck down an Illinois statute that made the children of unwed fathers wards of the state upon the death of the mother, regardless of the father's fitness as a parent. The Court held that unwed fathers could not be presumed to have no protectable parental interest. 405 U.S. at 649, 92 S.Ct. at 1211. The unwed father in Stanley, who had participated in the raising of his child, was constitutionally entitled to a hearing on his fitness as a parent before his custodial rights could be severed. Id. The fathers in the instant case could not be deprived of their custodial rights because they never had custody. See In re M. & G., 132 Vt. 410, 414, 321 A.2d 19, 22 (1974). Nor were the fathers being deprived of their residual parental rights because the order requested by the State spoke only to the rights of the mother. Id. The court's attempt to protect their rights was laudable, yet premature. The proper time to test the constitutionality of 15 V.S.A. § 441 will be when and if adoption proceedings are instituted. Id.
The court's order of March 15, 1982, is amended to read: It is ORDERED that the legal custody and guardianship of the children subject to these petitions are transferred to the Commissioner of Social and Rehabilitation Services without limitation as to adoption. As so amended, the order is affirmed.
NOTES
[1] 12 V.S.A. § 1612(a) provides that:

Unless the patient waives the privilege or unless the privilege is waived by an express provision of law, a person authorized to practice medicine or dentistry, a registered professional or licensed practical nurse, or a mental health professional as defined in 18 V.S.A. § 7101(13) shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.
18 V.S.A. § 7101(13) defines a "mental health professional" as:
[A] person with professional training, experience and demonstrated competence in the treatment of mental illness, who shall be a physician, psychologist, social worker, nurse or other qualified person designated by the commissioner.
[2] In contrast to the caseworker, the parties appear to agree that the psychologist's professional status fell within the provisions of § 1612. Without deciding this question, we note that he was a psychologist only, and was apparently not "authorized to practice medicine," 12 V.S.A. § 1612, supra, as defined in subchapter 3 of chapter 23, Title 26 V.S.A.
[3] 15 V.S.A. § 441 provides that notice of a hearing on a proposed adoption shall not "be given to the natural father when the minor was not born in lawful wedlock ... unless ... the parents of such minor have intermarried and such father has recognized such minor as his child and is contributing to the support of such minor...."