## In re K. M., Juvenile

[539 A2d 549]

No. 85-231

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Costello, D.J. (Ret.) and Martin, Supr. J., Specially Assigned.**

Opinion Filed December 18, 1987

*Howard E. VanBenthuysen,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Charles S. Martin,* Barre, for Defendant-Appellant mother.

*Steve Dunham,* Public Defender, St. Albans, for Defendant-Appellee juvenile.

**Martin, Supr. J.,** Specially Assigned. This case is an appeal from an order of the Vermont District Court, sitting as a juvenile court, transferring the legal custody and guardianship of K.M. to the Commissioner of Social and Rehabilitation Services (SRS) until further order of the court.

The only appellant, the mother of K.M., presents two arguments. First, she claims the State failed to show that K.M. was a child in need of treatment or rehabilitation under 33 V.S.A. § 655(c). Second, she contends the court failed to consider less drastic alternatives in its disposition order, even if the child was in need of treatment and rehabilitation. We disagree on both points and affirm.

The findings of the juvenile court clearly establish that K.M. was a "child in need of care or supervision," as that phrase is defined in 33 V.S.A. § 632(a)(12). The extensive pattern of abuse and neglect had not been fully realized by SRS until a short time before January, 1985, when K.M.'s brother was placed in SRS custody due to allegations of physical abuse caused by the mother's boyfriend. Nine weeks after K.M.'s birth on August 6, 1980, K.M. was hospitalized for a week due to a severe diaper rash. She has been placed in voluntary care on three occasions due to inadequate housing and family stress. On January 8, 1982, K.M. was hospitalized again. She had two ear infections, a fever, numerous "petechiae" on her arms and legs and was filthy. Her mother had been advised to be on the lookout for ear infections, but her condition had been allowed to progress to the point where hospitalization became necessary. Despite instructions by pediatricians, K.M.'s mother would not bring her to scheduled well-child health examinations, nor see to it that she received mandated immunizations for polio, diptheria, whooping cough, mea-

sles and mumps. As late as January, 1985, she was still exhibiting a neglectful attitude toward her daughter when she allowed a contagious skin disease on the infant's chin to go untreated for two weeks.

In July, 1983, the level of abuse and neglect escalated when the mother's boyfriend moved in with the family. One day in July, 1984, with the mother's knowledge, the boyfriend disciplined K.M. by chaining her to a doghouse for most of the afternoon without food or drink. K.M. had allegedly bitten another child, and the boyfriend had told her that "if you act like a dog, I'll treat you like one." On several occasions, the mother's boyfriend placed K.M. in a pen containing two pigs. The pigpen was described by witnesses as dirty, muddy, and full of straw and animal excrement. K.M. was frightened by the pigs, which were more than twice her size. The mother's response to this confinement was "the kids play there, they like the animals." Despite the boyfriend's abusive conduct toward K.M., the mother continues to live with him. "[T]he evidence revealed conditions substantially departing from the norm." *In re M.B.*, 147 Vt. 41, 43, 509 A.2d 1014, 1016 (1986).

In her first argument, the mother contends that the evidence presented at the disposition hearing was insufficient to show that K.M. was a child in need of treatment or rehabilitation. This argument has little merit. The court below found that K.M. was a very needy child; that the mother's boyfriend had mistreated her; and that her mother had failed to protect her. The court further found that the mother needed counseling to develop parenting skills; to learn how to deal with issues of abuse, anger, depression and self worth; and to help her to separate completely from the harmful influence of her boyfriend. And, finally, the court found that K.M. was now in a safe environment and had adjusted well to foster placement. These facts amply support the conclusion that K.M. was in need of treatment and rehabilitation.

In her second argument, K.M.'s mother claims the court failed to properly consider less drastic alternatives in its disposition order. To justify the removal of a child from her parent's home at the dispositional stage, the law requires "convincing proof and findings that the parents are unfit and demonstrably incapable of providing an appropriate home." *In re M.B.*, 147 Vt. at 45, 509 A.2d at 1017. The disposition findings do just that. K.M.'s mother makes much of the fact that there was little evi-

dence of abuse and neglect after June, 1984, and that K.M. appeared to the court to be in good health, well-nourished and properly clothed. That may be true, but the evidence also established that K.M. had been subjected to continual abuse by the boyfriend and continual neglect by the mother for a long period of time, and there was no evidence to suggest that these patterns had been broken prior to the disposition hearing. The primary reason K.M. was placed in temporary SRS custody after the merits hearing was due to the continued presence of the boyfriend. The court found that the boyfriend failed to recognize that his conduct toward K.M. was abusive and concluded that K.M. should not return home, at least until he was no longer a member of the household.

The mother relies on *In re J.M.*, 131 Vt. 604, 313 A.2d 33 (1973), in support of her argument that the evidence was insufficient to justify removal. Her reliance is misplaced. In *In re J.M.*, five children were removed from their home after it had been established that the oldest four had been neglected. The court reversed the determination that the fifth and youngest child had been neglected on the ground that proof of neglect of the older children did not necessarily establish that the youngest was neglected. In the case before us, the evidence clearly establishes that K.M. herself was abused and neglected, not just her older brother, so that *In re J.M.* simply does not apply.

Because of the continued presence of the boyfriend and his apparent belief that he did not mistreat K.M., the mother's request that she be allowed to retain custody under protective supervision pursuant to 33 V.S.A. § 661 with the condition that the boyfriend remain out of the home is neither realistic nor workable. See *In re T.L.S.*, 144 Vt. 536, 546-47, 481 A.2d 1037, 1043 (1984). On the facts found, the court was justified in granting custody to SRS and concluding that the SRS plan of services provided for the best interests of K.M. and was designed to accomplish an eventual return to her mother after appropriate counseling.

*Affirmed.*