## In re R.M., Juvenile

[549 A.2d 1050]

No. 85-273

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed May 27, 1988

*Howard E. VanBenthuysen, Franklin County State's Attorney*, St. Albans, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

*Steve Dunham, Public Defender*, St. Albans, for Defendant-Appellee.

**Dooley, J.** R.M. is a juvenile who was determined, after a hearing before the Franklin District Court, sitting as a juvenile court, to be a child in need of care and supervision (CHINS) as described in 33 V.S.A. § 632(a)(12)(A) and (B). Following this determination the juvenile court held a disposition hearing, as required by 33 V.S.A. § 656(a), and then ordered custody and guardianship of R.M. transferred to the Commissioner of Social and Rehabilitation Services. R.M.'s mother appeals both the mer-

its determination that R.M. is a child in need of care and supervision and the disposition order. We affirm as to the merits; we vacate and remand as to the disposition.

The instant case was commenced during the Christmas holidays of 1984. On December 30, 1984, R.M.'s mother contacted R.M.'s natural father and left R.M. in his care. R.M.'s parents were neither married nor living together. At that time, R.M. had been living with his mother and her boyfriend. R.M.'s father determined that it was not possible to take the child into the household in which he was living — which was a trailer-home housing himself, his wife, and eight others. After consulting with a social worker from the Department of Social and Rehabilitation Services (SRS), it was determined that R.M.'s father would keep the child that evening and that SRS would assume responsibility for the child on the next day. That evening, while R.M. was being bathed, his father's wife discovered a large — three inch by five inch — bruise on R.M.'s lower back and buttocks. The child attributed the bruise to being struck with a belt buckle by his mother's boyfriend. On December 31, 1984, the state's attorney for Franklin County filed a petition with the juvenile court alleging that R.M. was a child in need of care and supervision.

Attached to the State's petition was an affidavit signed by the district director of the Franklin County SRS office. The affidavit alleged that: R.M. had been abandoned by his mother; R.M.'s father was unable to care for R.M. at the time the child was abandoned; a large bruise had been discovered on R.M.'s buttocks; and R.M. claimed that the source of the bruise was "John" — his mother's boyfriend. On December 31, the court issued a temporary detention order transferring legal custody of R.M. to the Commissioner of SRS.

On January 10, 1985, an amended affidavit by an SRS social worker was filed with the juvenile court. The amended affidavit included allegations of abuse and neglect dating back to 1980. The substance of the amended affidavit was that R.M. had been both abused and neglected essentially since birth. On January 11, a hearing was held at which time R.M.'s mother denied the allegations made in the original petition and in the original and amended affidavits. The merits hearing was held on the 16th and 17th of January and included testimony from social workers familiar with R.M.'s history, as well as testimony from a pediatri-

cian who had treated R.M. over a period of years. The disposition hearing was held on May 29, 1985.

Appellant, R.M.'s mother, assigns as error five points which accrue from the merits hearing and one point related to the disposition proceeding. First, appellant argues that the juvenile court erred by allowing expert testimony to be given at the merits hearing when, according to appellant, the State failed to comply with her discovery requests regarding the expert testimony. Second, appellant contends that reversible error occurred at the merits hearing when the juvenile court permitted hearsay testimony to be admitted into evidence over the objections of appellant's attorney. Third, appellant claims that historical evidence concerning incidents of abuse and neglect of R.M. was improperly admitted at the merits hearing. Fourth, appellant assigns error to the juvenile court's receipt of evidence regarding abuse and neglect of R.M.'s sibling. Fifth, appellant contends that the juvenile petition filed by the State was constitutionally deficient because it did not inform her of the grounds for which the State sought to have R.M. declared in need of care and supervision. Sixth, appellant argues that the disposition order was unsupported by findings of fact, and, for that reason, must be reversed.

■ ■Appellant's first argument relates to the use of an expert witness whose identity was not disclosed by the State in response to discovery requests. On January 7, 1985, appellant filed a "Request to Produce and Interrogatories" in which, among other things, she requested "[a] list of expert witnesses that may be called at any hearing together with their addresses, their area of expertise, a copy of any written reports, a summary of their expected testimony and a description of their qualifications." She also filed a motion to shorten the time for answering the discovery requests. In response to the discovery request, R.M.'s attorney provided a list of potential witnesses on January 10. This list included the following: "Experts Dr. Yates, Dr. Holmes, pediatricians." Following the names of these experts the attorney noted: "Their records should be available to [R.M.'s mother] upon presentation of a release. I don't have them at this time. The supplemental affidavit should be helpful." The supplemental affidavit, also filed on January 10, included references to previous injuries to R.M. and to medical treatment R.M. had received. It detailed an examination of R.M. that Dr. Holmes conducted on December 31, 1984, in which Dr. Holmes found the large bruise. According

to the affidavit, R.M. stated to Dr. Holmes that appellant's boyfriend hit him with a belt buckle and Dr. Holmes found that the bruise was consistent with R.M.'s explanation, also referenced in the affidavit.

On January 11 a hearing was held on appellant's motion to shorten the time for discovery responses. R.M.'s attorney and the attorney for the State indicated that they were making efforts to comply with appellant's discovery requests. Appellant made no specific complaint that the responses to the requests about expert witnesses were unsatisfactory. In fact, beyond the statement by R.M.'s attorney that he had responded the best he could — which was not challenged by the mother's attorney — the discussion about interrogatories was limited to the availability of R.M.'s SRS file, the provision of addresses for witnesses to be called, and the names of any additional witnesses that might be found. Following that hearing, the court ordered SRS to provide appellant with copies of all records pertaining to R.M. that were in its possession; the court also ordered all parties to respond to appellant's interrogatories by January 15. No further information regarding expert testimony was provided to appellant before the merits hearing which commenced on January 16. At the merits hearing, appellant's attorney strenuously objected to testimony by Dr. Holmes because of insufficient discovery responses. The court, however, permitted the testimony. The testimony covered the history of Dr. Holmes' contacts with R.M., including treatment for bruises almost a year earlier. The appellant challenges the failure of the trial court to exclude the testimony.

CHINS proceedings are governed by the Vermont Rules of Civil Procedure. *In re J.R.*, 147 Vt. 7, 10, 508 A.2d 719, 721 (1986). V.R.C.P. 26(b)(4)(A)(i) authorizes the discovery of information about expert witnesses sought in this case. However, V.R.C.P. 37 sets forth a procedure that a party seeking discovery must follow where responses to interrogatories and requests to produce are incomplete. In such an instance, Rule 37(a) requires a motion for an order compelling discovery. See 8 C. Wright & A. Miller, Federal Practice and Procedure § 2285, at 773 (1970). Only if there had been a failure to comply with a specific discovery order would sanctions such as witness preclusion be appropriate in this case. See V.R.C.P. 37(b)(2).

In this case, there was a discovery order but it was actually an order shortening the time allowed by the rules to respond to the

interrogatories and request to produce. See V.R.C.P. 33(a), 34(b). Appellant never challenged the adequacy of the responses that had been filed and never sought an order to compel discovery under Rule 37(a). Thus, we construe the discovery order as relating solely to areas for which no responses had been provided. Appellant was not entitled to further sanctions based on this order.

Even if appellant had established the prerequisites to the availability of sanctions, we stress that the award of sanctions for failure to comply with discovery requests is vested in the sound discretion of the trial judge. *John* v. *Medical Center Hospital of Vermont, Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978). And, as we have frequently observed, matters of discretion in the trial court will be overturned on review only when it is shown that there has been an abuse of discretion or that discretion has been withheld. *Id.* at 519, 394 A.2d at 1135.

We find no abuse of discretion here. Appellant has not demonstrated any prejudice resulting from the juvenile court's decision not to impose sanctions. Specifically, appellant has not shown an inability to prepare adequately her case because of insufficient discovery responses. In fact, the subject matter of the testimony elicited from Dr. Holmes was available to R.M.'s mother through the SRS file, to which she had access prior to the merits hearing. Absent a showing of prejudice as a result of the juvenile court's refusal to impose sanctions pursuant to V.R.C.P. 37, we find no abuse of discretion. See *My Sister's Place* v. *City of Burlington*, 139 Vt. 602, 614, 433 A.2d 275, 282 (1981). Thus, the court's failure to impose any sanctions — and specifically witness preclusion — for the alleged discovery violations was not inappropriate and does not warrant reversal.

Appellant's next contention is that hearsay testimony was improperly admitted at the merits hearing, over appellant's objections, and that this action warrants reversal. Appellant claims that the testimony of two witnesses was tainted by impermissible hearsay. First, she challenges the testimony of Dr. Holmes, and, second, she challenges the testimony of R.M.'s maternal grandmother.

Appellant challenged the testimony of Dr. Holmes relating R.M.'s statement to him that appellant's boyfriend hit him with a belt buckle to cause the bruise that Dr. Holmes observed. When this testimony was proffered, the attorney for appellant objected vigorously. The attorney representing the State argued against

the objection, claiming that the testimony was within the hearsay exception of V.R.E. 803(4) relating to *"[s]tatements for purposes of medical diagnosis or treatment."* The objection was overruled.

Appellant argues, and correctly so, that under V.R.E. 803(4) — unlike the corresponding federal rule — statements relating to the inception or cause of a condition or symptoms are not admissible even if pertinent to diagnosis or treatment. See V.R.E. 803(4) and Reporter's Notes, V.R.E. 803(4). Compare V.R.E. 803(4) with F.R.E. 803(4) (Vermont rule omits provision permitting comment on "the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."). Thus, it is clear that Dr. Holmes' testimony relating R.M.'s statement about the cause of the bruise was inadmissible hearsay. *State* v. *Recor*, 150 Vt. 40, 47, 549 A.2d 1382, 1387 (1988); *State* v. *Gallagher*, 150 Vt. 341, 349, 554 A.2d 221, 226 (1988). Our decisions are clear that hearsay not admissible under the rules of evidence cannot be admitted in a juvenile merits hearing. See *In re J.L.M.*, 139 Vt. 448, 450, 430 A.2d 448, 450 (1981).

However, the erroneous admission of evidence by itself is not grounds for reversal. The burden is on the excepting party to demonstrate that the error resulted in prejudice. See V.R.C.P. 61 (error must "affect the substantial rights of the parties" and failure to take action to correct must be "inconsistent with substantial justice"); *In re R.L.*, 148 Vt. 223, 226, 531 A.2d 909, 911 (1987); *In re M.B.*, 147 Vt. 41, 44, 509 A.2d 1014, 1016 (1986).

In determining whether the hearsay testimony of Dr. Holmes was fatal to the merits proceedings, we first consider the effect of the testimony on the decision of the juvenile court. See *In re J.L.M.*, 139 Vt. at 450, 430 A.2d at 450; *In re Certain Neglected Children*, 134 Vt. 74, 77, 349 A.2d 228, 230 (1975); *In re M.P.*, 133 Vt. 144, 147, 333 A.2d 116, 118 (1975). In his "Requests to Find," the attorney for R.M. suggested findings supportive of a CHINS determination — exclusive of any reliance of the hearsay portion of Dr Holmes' testimony. The court's findings, however, briefly reference the tainted portion of the physician's testimony. Specifically, Finding 19 states: "While bathing R.M. the next day [R.M.'s father's wife] noticed a three inch by five inch bruise on R.M.'s left buttocks. The bruise was consistent with R.M. having been hit with a belt buckle." Only the last sentence of the finding might be based on hearsay, although it does not directly state

that appellant's boyfriend struck R.M. with a belt buckle. The first sentence of the finding — standing apart from the tainted portion — and in conjunction with the remaining 18 findings, adequately supports the court's conclusions that:

1. R.M. has repeatedly been physically abused by his mother and his mother's boyfriend, . . . . His mother . . . has refused to intervene to protect her children, despite seeing and having knowledge of the abuse.

2. [R.M.'s mother] has neglected R.M. for years. This neglect includes inadequate hygiene, non-utilization of clothing and failure to prevent physical and psychological abuse by herself and her live-in boyfriend.

3. [R.M.'s father] is not in a position to provide the care R.M. needs.

4. R.M. IS A CHILD IN NEED OF CARE AND SUPERVISION. 33 V.S.A. § 632, Subsections 12(a) and (b).

We have reversed a CHINS determination based on tainted evidence only when we have determined that the "findings independent of the challenged [evidence] do not support a conclusion that the child is without proper parental [care and supervision] . . . ." *In re M.P.*, 133 Vt. at 147, 333 A.2d at 118. See also *In re J.L.M.*, 139 Vt. at 450, 430 A.2d at 450 (determination of unmanageability reversed where it rested "solely" on the evidence that was erroneously admitted). Here, the court's conclusions are adequately supported by the findings, exclusive of the single reference to hearsay testimony. There are no grounds to reverse.

Appellant also challenges the testimony of R.M.'s maternal grandmother, because she testified about statements made by a cousin of R.M. (who had earlier appeared as a witness). Appellant argues that this testimony was hearsay and requires reversal.

An out-of-court statement offered for purposes other than the truth of the matter asserted is not hearsay. Reporter's Notes, V.R.E. 801(c). A careful review of the transcript in the instant case reveals that the grandmother's testimony — as it pertained to out-of-court statements by R.M.'s juvenile cousin — was intended only to set a time frame for occurrences about which the cousin had previously testified. The grandmother's testimony on this point, therefore, was not hearsay, see *Recor*, 150 Vt. at 47, 549 A.2d at 1387; *Norway* v. *Petit*, 112 Vt. 453, 455, 28 A.2d 380, 381-82 (1942); *Hill* v. *North*, 64 Vt. 604, 616 (1861); McCormick

on Evidence § 249 (3d ed. 1984); 4 Weinstein's Evidence ¶ 801(c)[1] (1987 revision), and appellant's hearsay objection was properly overruled.

Appellant's third argument is that the juvenile court improperly allowed the introduction of evidence supporting a finding and conclusion that R.M. had been a victim of abuse and neglect essentially since birth. Appellant bases her argument on the contention that the historical information introduced at the merits hearing — dating back to March, 1980 — was not relevant to whether R.M. was an abused or neglected child on December 31, 1984, the date on which the petition had been filed with the juvenile court. The essence of appellant's argument on this point is that the evidence is too remote and that it is more pertinent to disposition than to the merits.

This case is similar to two others this Court has decided — *In re K.M.*, 149 Vt. 109, 539 A.2d 549 (1987); *In re T.L.S.*, 144 Vt. 536, 481 A.2d 1037 (1984). In both *K.M.* and *T.L.S.*, there was a continuing pattern of abuse and neglect. In *K.M.*, we affirmed a finding that the juvenile was a child in need of treatment or rehabilitation on a determination that the "evidence revealed conditions substantially departing from the norm." *K.M.*, 149 Vt. at 111, 539 A.2d at 550. In *T.L.S.*, 144 Vt. at 541, 481 A.2d at 1039-40, we held that the juvenile court's determination that two children were children in need of care and supervision was adequately supported by evidence "disclos[ing] that *throughout the lives of the two children*, the mother ha[d] shown a complete inability to cope with the stress of parenting. Her tendency ha[d] been to react to that stress with abusive and neglectful conduct toward the children." (emphasis added). The merits hearing in *T.L.S.* in fact chronicled incidents of abuse and neglect exceeding even the time span involved in the instant case. *Id.* Given the recognition of evidence of a pattern of abuse and neglect, there is no question that the challenged evidence was admissible in this case.

In her fourth attack on the juvenile court's merits determination, appellant contends that the court improperly accepted evidence as to both lack of care, and abuse of one of R.M.'s siblings, and then inappropriately used such evidence to support findings of fact and ultimately the conclusion that R.M. was a child in need of care and supervision. Appellant argues that the

receipt and use of this evidence runs afoul of our decision in *In re J.M.*, 131 Vt. 604, 313 A.2d 30 (1973), and V.R.E. 404(b).

In *In re D.P.*, 147 Vt. 26, 510 A.2d 967 (1986), we were confronted with a situation which required measuring the relevance of the circumstances and conditions of one sibling in determining the circumstances and conditions of another. In that case, we stressed that "[w]hether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case." *Id.* at 30, 510 A.2d at 970. There, a previous history of abuse had been established in regard to D.P., and when similar injuries were inflicted on a sibling, the juvenile court — considering the history of abuse against D.P. and the escalation in seriousness of the abusive behavior as directed toward the sibling — properly determined that D.P. was a child in need of care and supervision. *Id.* at 30-31, 510 A.2d at 970; see also *In re K.M.*, 149 Vt. at 112, 539 A.2d at 551 (reliance on evidence of abuse of a sibling is not error where there is evidence of the abuse of the juvenile).

*D.P.* presents a different situation from that present in *J.M.*, 131 Vt. 604, 313 A.2d 30, the case relied upon by the appellant. There, the juvenile court had been presented with five neglect petitions, one for each of five siblings. The court consolidated the hearings on the five petitions and ultimately determined that all five children were neglected children. The merits determination in that case consisted of eleven one-sentence findings of fact and was followed by a conclusionary finding made at the disposition hearing repeating the allegations of the petition. The subsequent appeal came from the determination that J.M. was a neglected child — there was no appeal taken in regard to the other four children "who were placed with other families under mutually satisfactory arrangements." The evidence and the findings in *In re J.M.* related exclusively to J.M.'s four siblings, except for the general revelation that "J.M. lived in an overcrowded and untidy home. [And] [h]is mother and father were unable to adequately provide for the complete family of five due to various factors including income."

We determined that "[t]he findings applicable to the other children [could] not *control* the case of J.M." *Id.* at 608, 313 A.2d at 32 (emphasis added). Our conclusion was not that the circumstances regarding the other children were irrelevant as to the merits of J.M.'s proceeding, but only that — exclusive of any

findings specifically relating to J.M. — they were not by themselves determinative. *Id.* at 609, 313 A.2d at 33.

This case is much closer to *D.P.* than to *J.M.* Nearly all the evidence and nearly all the findings pertained specifically to R.M. The additional evidence and the findings supported by such evidence describes neglect of R.M.'s sister by the mother, as well as physical abuse of R.M.'s sister by the mother's live-in boyfriend. It is indicative of a broad pattern of abuse and neglect generally pervasive in this household and clearly relevant to R.M. The evidence about the treatment of the sibling is relevant and can be relied on to support the court's conclusions with respect to R.M. See *In re D.P.*, 147 Vt. at 30-31, 510 A.2d at 970.

Addressing appellant's peripheral claim on this point — that the introduction of evidence pertinent to abuse and neglect of R.M.'s sibling was violative of the prohibition against the use of prior bad acts to prove character of a person — we find that V.R.E. 404(b) does not apply under the circumstances of the instant case. The purpose of challenged evidence was not to demonstrate that R.M.'s mother acted in conformity with a particular character trait, but, rather, its legitimate purpose was to show the totality of the home environment directly impacting on the well-being of R.M.

Thus, appellant's fourth challenge to the merits determination fails.

Next, appellant urges reversal of the merits determination on the basis that the juvenile petition was constitutionally defective in that it failed to inform the mother — with particularity — of the grounds on which the State was seeking to have R.M. determined to be a child in need of care and supervision. Essentially, appellant argues that the State was misleading in stating which provisions of 33 V.S.A. § 632(a)(12) it was proceeding under. 33 V.S.A. § 632(a)(12) states the following:

> "Child in need of care or supervision" means a child who:
> (A) Has been abandoned or abused by his parents, guardian or other custodian; or
> (B) Is without proper parental care or subsistence, education, medical, or other care necessary for his well-being; or
> (C) Is without or beyond the control of his parents, guardian or other custodian, or being subject to compulsory school

attendance, is habitually and without justification truant from school.

The determination that R.M. is a child in need of care or supervision was made pursuant to subsections (a)(12)(A) and (a)(12)(B) of § 632. The error alleged by appellant is that the original affidavit supporting the petition filed on December 31, 1984, claimed essentially that R.M. was a child in need of care or supervision because he had been abused or abandoned. Subsequently, on January 10, 1985, an additional affidavit was filed. The substance of the amended affidavit was to allege that, in addition to having been abused or abandoned, R.M. was a neglected child. Appellant contends that, as a result, the petition — with its supporting affidavits — was insufficient to provide adequate notice as to the nature of the State's case. Moreover, appellant contends that, because § 632(a)(12) is written in the disjunctive, it was improper for the State to pursue a CHINS determination under more than one of the subsections.

There is no question that in a juvenile proceeding the constitutionally protected due process rights of the parents must be stringently observed. See *In re Lee*, 126 Vt. 156, 158-59, 224 A.2d 917, 919 (1966); see also *In re Gault*, 387 U.S. 1, 33 (1967) (requiring notice that is both timely and particular as to allegations to which the parent must respond). In determining whether sufficient notice has been provided to the parents in such a proceeding, our case law is clear that the affidavits supporting a juvenile petition will — if they plainly recite the substance of the allegations — satisfy the requirement of particularity so as to afford the parties an adequate opportunity to respond. *In re S.A.M.*, 140 Vt. 194, 197, 436 A.2d 736, 737-38 (1981); cf. *State* v. *Christman*, 135 Vt. 59, 61, 370 A.2d 624, 626 (1977) (affidavits supporting a criminal information are to be read in conjunction with the information in order to determine whether defendant has been provided adequate notice of the charges against which he or she must defend).

A careful review of the petition and affidavits filed in the present case indicates, unmistakably, the State's intent to show that R.M. was a child in need of care or supervision under *both* subsection (a)(12)(A) and subsection (a)(12)(B). Thus, it cannot be said that the notice given to appellant was less than adequate. Cf. *Christman*, 135 Vt. at 60, 370 A.2d at 625 (constitutional due process requirements — in a criminal proceeding — are met if the

"complaint or other form of accusation [is written] with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense."). Appellant has failed to demonstrate any prejudice based on the form, substance, or timing of the petition and affidavits in this case.

Turning to appellant's contention that it was improper for the State to proceed under both subsection (a)(12)(A) and subsection (a)(12)(B), we note that our cases clearly demonstrate that the State is not required to make an election under 33 V.S.A. § 632(a)(12), as it is possible for a child to be in need of care or supervision because of the existence of circumstances described in one or more of the subparts of § 632(a)(12). See, e.g., *In re T.L.S.*, 144 Vt. at 541, 481 A.2d at 1040 (CHINS determination supported by evidence that children had been both abused *and* neglected).

Thus, as appellant's final challenge to the merits determination is unavailing, the juvenile court's conclusion that R.M. is a child in need of care and supervision under 33 V.S.A. § 632(a)(12)(A) and (B) must stand.

■ Appellant's sixth argument for our consideration challenges the validity of the disposition determination. Appellant contends that the disposition order is fatally defective because the juvenile court's conclusion that R.M. should be placed under the custody and guardianship of the Commissioner of SRS was unsupported by any findings on the record. The failure of the juvenile court to make findings on the record is inconsistent with our mandate in *In re M.B.*, 147 Vt. at 45, 509 A.2d at 1017, where we stressed that:

> [B]efore a child may be removed from the parental home at the dispositional stage, there must be convincing proof and findings that the parents are unfit and demonstrably incapable of providing an appropriate home, and that separation is necessary for the child's welfare or in the interest of public safety. It is crucial that findings indicate to the parties and to this Court, if an appeal is taken, what was decided and how the decision was reached.

(citations omitted). Because the disposition order is unaccompanied by findings that the parents of R.M. are "unfit and demonstrably incapable of providing an appropriate home, and that sep-

aration is necessary for the child's welfare or in the interest of public safety," it cannot stand. *Id.* "In view of the period of time which has passed since the disposition hearing, the juvenile court [must] hold a new disposition hearing in order to determine the current circumstances of the parties." *Id.*

*Affirmed as to the merits determination; the disposition order is vacated and the cause is remanded for a new disposition hearing.*