571 A.2d 677 (1990)
In re S.G., Juvenile.
No. 88-171.
Supreme Court of Vermont.
January 12, 1990.
*678 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Barbara L. Crippen, Sp. Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Walter M. Morris, Jr., Defender Gen., and Henry Hinton, Appellate Defender, Montpelier, for defendant-appellant.
Before ALLEN, C.J., PECK and DOOLEY, JJ., and KEYSER, J. (Ret.), Specially Assigned.
DOOLEY, Justice.
Appellant mother appeals the findings of the juvenile court which adjudged her infant child, S.G., to be a child in need of care and supervision (CHINS) and transferred legal custody of S.G. to the Commissioner of Social and Rehabilitation Services (SRS). The mother raises two errors on appeal: (1) the juvenile court concluded that the mother abused S.G. based on evidence that the mother had abused another child almost four years earlier than the current incident; and (2) the court erred by admitting and relying on hearsay evidence in its disposition findings. We affirm.
S.G. was born on July 15, 1987. When S.G. was two months old, appellant contacted a pediatrician because the child was acting unusually fussy. At first the doctor believed that the child was suffering from a virus and instructed appellant how to care for S.G. and to call again if she did not improve. The next day, after calling the doctor to say that the child was still very fussy, appellant, accompanied by her own mother, brought S.G. to the doctor for a physical exam. The doctor's initial examination failed to disclose any reason for the baby's fussiness or slightly elevated temperature. The baby was then brought to the hospital for further tests. During these tests, the doctor observed that S.G. "wasn't moving her right leg as well as everything else." An x-ray of the leg was taken which revealed a clear cut fracture of the baby's right tibia.
After the discovery of the break, appellant offered the doctor a possible explanation. She told the doctor that she had straightened out the baby's legs several days earlier when the baby was sleeping with her knees tucked under her chest. Later, appellant told others that the leg may have broken when the baby went limp in her arms and, as the baby was falling, she caught her by the leg.
The doctor suspected child abuse and notified SRS. SRS brought a CHINS petition after obtaining temporary custody of S.G. The juvenile court issued a temporary detention order giving custody to SRS pending the outcome of the merits hearing. A merits hearing was held on two days during October 1987, after which the court adjudged S.G. to be a CHINS. The written order stated as findings that: "[T]here is reasonable grounds to believe that the child is in immediate danger from her surroundings based on an injury which a physician felt was due to abuse by the mother." SRS then filed a disposition report which recommended that the custody and guardianship of S.G. be transferred to SRS but that she remain in the daily care of her father. The report also anticipated visitation between the mother and S.G. along with special counseling for the mother. A disposition hearing was held on January 20, 1988, at which appellant did not contest the recommendations and the court accepted them. She did, however, challenge several of the findings contained within the SRS disposition report. Nevertheless, the court accepted the findings stated in the report.
The mother's first claim of error on appeal is that during the merits hearing the juvenile court improperly admitted and relied upon a former social worker's testimony that appellant had abused her other child four years earlier. Appellant argues that this evidence of a prior bad act is barred under V.R.E. 404(b), or, in the alternative, that its prejudicial effect outweighs its probative value so that it is inadmissible *679 under V.R.E. 403. Appellant further argues that the court erred by failing to support its Rule 403 ruling by findings or a statement of reasons.
Although appellant never testified at the merits hearing, her alternative explanations for the child's injurythat the injury was caused by accidentwere attested to by others, including the child's father. Following the father's testimony, the State attempted to call a former SRS social worker who had been involved with the mother and the mother's oldest child, A.F., several years earlier. Both the State and S.G.'s attorney argued that the social worker's testimony was relevant and probative because a similar incident had occurred between the mother and A.F. and, therefore, the testimony would establish an absence of an accident. The court, however, determined that until the doctors testified, the social worker's testimony was not relevant and was prejudicial.
The examining physician testified at length concerning the baby's injury. In addition, the doctor testified that it is very unusual for a parent of an infant child to not know the cause of a traumatic physical injury because infants are generally supervised very closely. The doctor concluded her testimony by stating that the reason that she felt that this was a case of child abuse was because "the explanation that was offered wasn't very consistent with what the findings were." The orthopedic surgeon who applied the cast on the baby's leg also testified. He stated that it is unusual for children S.G.'s age to have fractures unless they've had a major fall because babies' bones are "very plastic, meaning that they can bend easily without breaking." The surgeon also stated that while it was plausible for the break to occur if the mother grabbed the child by the leg to prevent a fall, he would still be suspicious that it was more than just an accident.
Following the doctors' testimony, the court, over the mother's objection, allowed the State to introduce the former social worker's testimony. The social worker stated that she first became involved with the mother four years earlier when the mother's other daughter, A.F., suffered a fracture to her right arm. A.F. was also two months old at the time of her injury. The social worker testified that at first the mother gave no explanation for the injury, and then about a month later the mother admitted that she had severely twisted the baby's arm. The social worker also stated that A.F. suffered other injuries, including an injury to the leg, a bruise on the cheek, a black eye and an injury on her lip.
At the close of arguments, the court orally presented its findings of fact on the record. One of the court's findings was that: "Four years earlier the mother had another child, [A.F.]. [The child] suffered a broken arm. Although the type of break was somewhat different, it was still similar as far as a broken bone was found in this particular case with this child." The written findings issued three days later do not refer to the social worker's testimony. Based on its findings, the court concluded that the mother caused the injury to S.G., that the child suffered from abuse, and that S.G. was a child in need of care and supervision.
As with all evidentiary questions, two issues must be resolved before the evidence can be admitted. First, the evidence offered must be relevant, and second, if it is relevant, the probative value of the evidence must not be substantially outweighed by its prejudicial effect. Turning first to the relevancy issue, Vermont Rule of Evidence 404(b) provides guidelines for determining when evidence of prior bad acts is relevant. It is well established under both common law and the rules of evidence that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." V.R.E. 404(b). Although it is clear that such evidence is not relevant to prove that the person acted in conformity with his or her past activity, Rule 404(b) specifically allows evidence of prior bad acts to be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence *680 of mistake or accident." V.R.E. 404(b).
SRS has argued this case as one involving evidence bearing on "absence of ... accident," a purpose specifically authorized by V.R.E. 404(b). In the view of SRS, the fact that the injury to the mother's older child was not an accident is probative that this incident was not an accident. Certainly, this case meets the first requirement to admissibility as probative on absence of accidentthat is, the mother claims that the fracture of S.G.'s leg was caused by accident. See Comment, Admission of Evidence of Other Misconduct in Washington to Prove Intent or Absence of Mistake or Accident: The Logical Inconsistencies of Evidence Rule 404(b), 61 Wash.L.Rev. 1213, 1223-24 (1986). It is not clear, however, that it meets other requirements that necessarily arise with this kind of evidence.
The absence of accident exception of Rule 404(b) is built upon the proposition that a number of accidents of the same type are unlikely. Wigmore uses the following example:
Thus if, one morning after a high wind, A's cellar window is found broken, the pieces lying inside, he may well assume the probability that the force of the wind blew the glass in; but if, on the next morning and the next, he again finds a window broken in the same way, though no high wind prevailed the night before, he gives up the hypothesis of the force of the wind as the explanation, and concludes that a deliberate human effort was the highly probable cause of the breakage....
2 J. Wigmore, Evidence § 303, at 247-48 (Chadbourn rev.1979). As Wigmore emphasizes, "it is the improbability of a like result being repeated by mere chance that carries probative weight." Id. § 302, at 245.
In this case, SRS is not relying solely on the improbability that the broken bones of both infants occurred by accident, since the evidence included the mother's admission that she caused the broken bone of A.F. The court is being asked to find that because the mother physically abused A.F., there is a greater likelihood that she physically abused S.G., an equation that would normally run afoul of V.R.E. 404(b). While the earlier incident would raise skepticism that the mother was unaware that S.G.'s symptoms were caused by a broken leg, it does not appear that SRS limited the evidence to this use. We are reluctant to ground the admission of this evidence on the rationale selected by SRS. We think, however, there is a broader ground for admitting the evidence.
This case is very similar to In re R.M., 150 Vt. 59, 549 A.2d 1050 (1988). In that case, evidence was introduced that R.M. had been abused by her mother. The State then elicited evidence which showed that the mother had also abused R.M.'s sister. The evidence was admitted because it was "indicative of a broad pattern of abuse and neglect generally pervasive in this household and clearly relevant to R.M." Id. at 69, 549 A.2d at 1056. We concluded that the additional evidence and findings concerning physical abuse of the child's sibling was relevant and could be relied upon by the court to support its conclusions because nearly all the evidence produced during the CHINS merits hearing and nearly all of the court's findings pertained specifically to the alleged abused child. Id. We also concluded that Rule 404(b) did not prohibit this evidence because the purpose of the evidence was to show R.M.'s home environment and not to demonstrate that the mother acted in conformity with a particular character trait. Id.
R.M. built upon the earlier decision in In re D.P., 147 Vt. 26, 30-31, 510 A.2d 967, 970 (1986), a case that is also similar to this one. In D.P., extensive evidence of physical abuse of the child had led to a CHINS determination and a disposition order placing custody with SRS with gradual reintroduction of the child into the family. When another child was born to the mother and two months later examination of that child showed a perforated colon and rib fractures, SRS moved to terminate parental rights to D.P. In response to the parents' argument that the court could not use the evidence of the physical abuse of the other *681 child to find abuse of D.P., we found that the use of evidence of abuse of one child to show abuse of a sibling "must be determined on the basis of the facts of each case." Id. at 30, 510 A.2d at 970. We found that where the injury to the other child was "strikingly similar" to the earlier injury to D.P. and was more serious, there was a deterioration in parental capacity that warranted court action to terminate parental rights.
R.M. and D.P. are consistent with the decisions of other states that allow use of evidence of prior abuse of the same or a different child in juvenile proceedings. See, e.g., S.C. v. State, 471 So.2d 1326, 1328 (Fla.Dist.Ct.App.1985) (parents' past conduct with respect to other children is relevant); In re Schmeltzer, 175 Mich.App. 666, 678, 438 N.W.2d 866, 871 (1989) (how a parent treats one child is probative of how the parent will treat another); In re A.M.A., 439 N.W.2d 535, 538 (N.D.1989) (evidence of prior abuse may be considered on whether the abuse will continue). These decisions reflect that the issue in juvenile proceedings is not whether the parent did a particular act or acted in conformity with a particular character trait but instead whether the child has proper care and his or her well-being is protected. Thus, under 33 V.S.A. § 632(a)(12)(B), a CHINS child is one who is "without proper parental care or ... medical ... care necessary for his well-being." The breadth of the standard necessarily means a broad evidentiary inquiry.
In accordance with the holding in R.M., we believe that evidence of similar abuse of siblings is admissible, without running afoul of V.R.E. 404(b), as relevant to the "totality of the home environment directly impacting on the well-being" of the juvenile. In re R.M., 150 Vt. at 69, 549 A.2d at 1056. This use is unique to juvenile proceedings because of the breadth of the inquiry and the focus on the child. In reaching this result, we emphasize that the juvenile court must still use the evidence appropriately to ensure that the CHINS determination is based on the care available to and well-being of the juvenile before it. Compare In re J.M., 131 Vt. 604, 608, 313 A.2d 30, 32 (1973) (findings with respect to siblings could not control determination with respect to child before the court).
We also recognize, as argued by the defendant, that there comes a point where the probative value of such evidence is substantially outweighed by its prejudicial impact and the court must exclude it. See V.R.E. 403. This balancing, however, is left to the sound discretion of the trial judge, and we will reverse only if the trial court has abused its discretion. See State v. Derouchie, ___ Vt. ___, ___, 568 A.2d 416, 418 (1989). Although we must find proper use of discretion, the trial court is not required to state precisely why it found that the probative value was not substantially outweighed by prejudicial effect. Id. at ___, 568 A.2d at 419.
The evidence of the abuse of A.F. involved an incident that was very similar to that involving S.G. While the incident occurred four years earlier, the age of A.F. at the time was close to that of S.G. at the time of the incident in this case. Admittedly, A.F.'s injuries were caused by child abuse. We believe the court did not abuse its discretion in finding that the probative value was not substantially outweighed by the prejudicial effect.
Most of the evidence and most of the findings in this case related directly to S.G. While the court made oral findings with respect to the injuries to A.F., there is no indication that the court's use of this evidence was inappropriate. We find no error in the admission and use of the evidence of the injuries to A.F.
Appellant's second claim of error is that the juvenile court admitted and relied on hearsay evidence in its disposition findings. Following the merits hearing in which S.G. was adjudged a CHINS, SRS filed a disposition report with the court pursuant to 33 V.S.A. § 655. At the disposition hearing, appellant objected to the information contained in the report, but she did not contest SRS's recommended disposition of S.G. The primary purpose of the mother's objections was to protect herself against the possibility of a future termination proceeding. *682 As her attorney stated to the juvenile court: "Should there come a time when a termination proceeding is being brought, I don't want my client ... to have lost any rights because she does not disagree with the recommendation of the report and the goals that are stated therein, that she's somehow then assented to all the other information which has been presented to the court." Although the court provided ample opportunity for the parties to present witnesses, they all declined.
In general, all information that may be helpful in determining the disposition of a CHINS child may be admitted and relied upon during a disposition hearing. 33 V.S.A. § 655(d). Because parental unfitness must be proved by clear and convincing evidence, we have been critical of relying too heavily on hearsay evidence in making this determination. See, e.g., In re R.L., 148 Vt. 223, 228, 531 A.2d 909, 912 (1987); In re Y.B., 143 Vt. 344, 347-48, 466 A.2d 1167, 1169 (1983). However, we have never held, as appellant asserts, that the findings in a disposition order cannot be based, at least in part, on hearsay. Rather, our holdings affirm the admissibility of hearsay to show parental unfitness provided that there is additional credible, nonhearsay evidence as well. See In re R.B., 152 Vt. ___, ___, 566 A.2d 1310, 1314 (1989); In re C.L., 151 Vt. 480, 487, 563 A.2d 241, 246 (1989). Further, a determination of parental unfitness may be based solely upon hearsay evidence contained in the disposition report unless the party seeking to exclude the evidence makes its objection known to the court. See In re C.L., 151 Vt. at 487 n. 1, 563 A.2d at 246 n. 1; In re R.L., 148 Vt. at 228, 531 A.2d at 912.
There are two levels of hearsay involved in this case. The first is the report itself, which was admitted without a foundation witnessi.e., the social worker. The statute clearly requires the admission and use of the report, see 33 V.S.A. § 655(a), and in any event, the mother did not object to the report itself, as opposed to part of its contents. The second level is the hearsay statements of persons interviewed by the author of the report and repeated in the report. As to these, we can say that the report included sufficient credible, nonhearsay evidence to justify the disposition without the second level hearsay to which the mother objects. Thus, under R.B. and C.L. there was no error in admitting and considering the hearsay.
There remains to be considered the request that we strike the findings while maintaining the disposition order. The mother's position on this issue is contradictory. On the one hand, she did not object to the disposition order and, in fact, indicated support for it even though she was unwilling to stipulate to it. On the other hand, she objected to the findings on which the order is based, seeking, as her brief terms it, a "no-fault" order of custody to SRS. The mother's refusal to stipulate to the disposition required the court to make findings of fact in support of its determination of parental unfitness. See In re M.B., 147 Vt. 41, 44-45, 509 A.2d 1014, 1017 (1986). We are not going to put overworked juvenile courts through the exercise of resolving evidentiary disputes and contests over findings in uncontested proceedings. We are unconvinced that there will be sufficient unfair collateral consequences to the mother to justify this use of scarce judicial resources.
Affirmed.