*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-046

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re S.T., B.T. and S.T., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 55/56/57-3-07 Frjv |

Trial Judge: A. Gregory Rainville

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal from a judgment of the Superior Court, Family Division, terminating their parental rights to the minors B.T., Sk.T., and Sa.T. Father contends: (1) the evidence and findings fail to support the trial court's conclusion that he would not be able to resume parental responsibilities within a reasonable period of time; and (2) the petition to terminate parental rights failed to provide adequate notice of the grounds on which the Department for Children and Families (DCF) was seeking termination. Mother contends the trial court improperly failed to look to her prospective ability to parent the child in determining that she could not resume parental responsibilities within a reasonable period of time, and also joins father's claim that the TPR petition failed to provide adequate notice of the grounds for termination. We affirm.

The material facts as found by the trial court may be summarized as follows. Mother and father have three children, B.T., Sk.T., and Sa.T, who were fourteen, eleven, and four years old, respectively, at the time of the final hearing in May and July 2011. DCF had been providing services to the family since 2002. The children were adjudicated CHINS in 2007 based on their parents' substance abuse, neglect, and domestic violence. B.T. suffers from cerebral palsy, is physically and cognitively disabled, is wheelchair bound, and receives nutrition and medication through feeding tubes. He has lived with a foster family since March 2007, and receives assistance from a personal care attendant. Both Sk.T. and Sa.T. have been in foster care since 2007. After numerous placements, both were placed with their paternal aunt and uncle in August 2010, where they have since remained. Sk.T. has suffered trauma from years of exposure to his parents' domestic violence and substance abuse, and he receives special education services for reading and writing.

Mother has an extensive history of chronic and severe drug abuse and substantial mental health issues, including recurrent depressive episodes and hospitalizations. These problems were exacerbated, the court found, by her twenty-year relationship with father, who has physically and emotionally abused her, and who was convicted of domestic assault in 2005. Father has an equally extensive history of drug and alcohol abuse, which have resulted in multiple DUI convictions, probation violations, and a lifetime suspension of his driver's license.

In March 2010, the court approved a case plan to transition the children to parental custody conditioned on numerous requirements, or, alternatively, to terminate parental rights in the event that the transition was unsuccessful. Pursuant to that plan, Sa.T. began living with mother and Sk.T. began living with father. B.T. was supposed to live with his mother, but before the transition she notified DCF that she would not be able to parent B.T. full time due to his extensive needs. During the summertime in 2010, mother and Sa.T. moved in with father; in July, a violent episode between mother and father at father's residence when the children were present in the house led to their removal and return to foster care. DCF filed a termination petition in November 2010. Following a five-day evidentiary hearing in May and July 2011, the court issued a written decision granting the petition.

As to mother, the court found that she had failed to complete the case plan and transitional requirements, and that by June 2010, things had "deteriorated dramatically." Between the time of the case plan and the TPR hearing, mother had failed to attend counseling, was hospitalized for psychosis, tested positive for illegal substances, and had not visited the children since the fall of 2010.

The court also found that father had not met the case plan and transitional requirements, having failed to engage in substance abuse counseling, sign releases, communicate with the parent coordinator, attend service-team meetings, engage in counseling with Sk.T., support Sk.T.'s skills training, enroll Sk.T. in a summer program consistent with his I.E.P., or make any significant progress in developing parenting skills. He admitted the use of illegal drugs, and the court found that during the time Sk.T. and Sa.T. were living in his home, father allowed mother to abuse drugs in the home and father himself abused drugs. Rather than stepping into the primary parental role with Sk.T. during the transition period, father relied heavily on his own mother to serve as the main contact for service providers and scheduling. In addition, over the course of years, father maintained little or no contact with B.T.

The court thus concluded that both parents' ability to care for the children had stagnated. Turning to the critical question as to whether they could resume parental responsibilities within a reasonable period of time, the court found that both had failed to adequately address their serious mental health, substance abuse, and domestic violence issues, that both had continued to abuse drugs and alcohol, and that neither had demonstrated an ability to care for their own basic needs, much less those of the children. The court concluded on the basis of these factors that 'it is highly unlikely that [m]other or [f]ather will be able to resume their parental duties in the near future." The court further stated, "Viewed from the perspective of these three children, a reasonable period of time has passed and their parents are unable to resume their parental duties now."

The court found, in addition, that although their relationship with the children was a loving one, neither parent had played a constructive role in their lives, having engaged in substance abuse and domestic violence while the children were in their care, and having been absent from their lives for long periods of time. The court also found that the children had adjusted well to their foster homes and community, where they were well cared for and thriving. Accordingly, the court concluded that termination was in the best interests of the children. These appeals followed.

Father contends the trial court's conclusion that he could not resume parental responsibilities within a reasonable period of time was erroneous in several respects. First, he claims that the court erroneously focused on his past problems rather than his ability to parent in

the future. We have cautioned that the court cannot simply conclude that a reasonable period of time ended "years before the termination-of-parental rights hearing," but rather "must consider the parent's prospective ability to parent the child." In re B.M., 165 Vt. 331, 337 (1996). We have also recognized, however, that "past events" are highly relevant to determining a parent's future prospects, id., and this was precisely the court's approach here, concluding that father's demonstrated failure over the past four years to address his substantial and ongoing substance abuse and addiction problems, to develop a safe and stable home environment, and to acquire adequate parenting skills rendered it unlikely that he would be able to resume parental responsibilities within a reasonable time. Although the trial court opined that the time for parents to resume parental duties had passed, it did analyze whether, in light of father's failure to make meaningful progress to date, he was likely to be able to resume parental duties in the near future. Accordingly, we find no error.

Father also claims that several findings underlying the court's conclusion that he could not resume parental responsibilities were unsupported and/or irrelevant. Our review in this regard is limited. We will uphold the trial court's factual findings unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993). "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." Id. It is within the trial court's "sound discretion" to weigh the evidence and determine the credibility of the witnesses. Id.

Father claims that the court's finding that he lacked "stable housing and employment" was erroneous and did not support the court's conclusion that father would not be capable of caring for his children. Father notes in this regard that he held several different jobs in the year preceding the termination hearing and had never been homeless, having moved frequently between his own apartment, his mother's residence, and housing provided by his agricultural employers. The court recognized that father had "a strong work ethic" but was concerned with father's ability to provide a stable home environment and support for the children, and the impact that continual moves every few months would have on the children's schooling and service providers. The record supports the court's finding; between his February 2009 release from jail and the July 2011 hearing, we see evidence of seven changes of residence by father.

Moreover, we note that the court's conclusion that father was unable to resume parental duties in a reasonable time was predicated primarily on father's demonstrated failure—despite a multiplicity of services—to resolve the substance abuse and addiction issues that had dominated his life, and his inability to develop his parenting skills and address the needs of the children. Accordingly, we find no basis to disturb the judgment. See In re A.F., 160 Vt. at 178 (affirming termination of parental rights where, even with deletion of questionable finding, the remainder of the findings that were supported by the record were sufficient to sustain the decision to terminate).

Father also asserts that the trial court erroneously relied on his failure to address "serious mental health issues." He claims that the subject was not raised by DCF as a ground for termination, and that the evidence did not support a finding that he had mental health issues. The TPR petition expressly referenced and incorporated the most recent case plan, which in turn documented father's significant behavioral issues and inability "to regulate [his] emotions," and required that he demonstrate progress in his ability "to self regulate and manage his emotions in healthy ways." Moreover, in noting father's ongoing mental health issues, the court relied on a variety of evidence, including a DCF social worker's testimony that father had admitted to her that he was depressed and isolated and that she recommended counseling, father's testimony at a hearing in March 2011 that he was so despondent he wanted to put a bullet in his head, and the

3

court's observation that father appeared depressed, broke down in the courtroom on a number of occasions, and stormed out of court on the final hearing day. Although father suggests this was insufficient absent expert clinical evidence, he cites no authority for the claim. Moreover, father ignores the inextricable link between peripheral references to mental health issues and unchallenged findings that father had severe drug and alcohol abuse issues.

Father further asserts that the evidence failed to support the court's finding, in connection with an incident in July 2010, that the children had been exposed to domestic violence due to father's "lack of insight." Father claims that the court implied, erroneously, that he shared the fault for the incident. He also asserts that any lack of insight on his part had been "cured." The claims lack merit. The trial court expressly found that mother "was the primary perpetrator" behind the incident and that father tried to restrain her and prevent harm to the children. Father's lack of insight concerned his misjudgment in allowing mother back into the home despite her continuing drug abuse and mental instability, as well as father's refusal to allow Sk.T. to call the police during that incident out of fear that the call would lead to father's reincarceration. Although father testified that he had learned from the incident, ample evidence supported the court's finding that he had not gained sufficient insight or self-control to put the children's welfare and interests above his own.

Finally, father contends that the TPR petition failed to provide constitutionally adequate notice of the grounds on which DCF was seeking termination. Father's motion to dismiss on this basis was rejected by the trial court, and he has renewed the claim on appeal.[1] We have held that a juvenile petition must "recite the substance of the allegations" sufficiently to afford "an adequate opportunity to respond." In re R.M., 150 Vt. 59, 70 (1988). We concur in the trial court's conclusion here that this requirement was met. Although relatively brief, the petition here alleged that there was no likelihood that either parent could resume parental responsibilities "as evidenced by the case plan review, attached and incorporated herein." The case plan, in turn, set forth in detail the parents' failure, despite the provision of numerous services, to meet the requirements of the previous plan, to remain substance free, engage in substance abuse counseling, maintain contact with DCF, and provide an environment that is safe from the risk of physical and emotional harm to the children. This was sufficient to convey notice of the substance of the allegations and provide an opportunity to respond. We thus find no merit to the claim.

In her separate appeal, mother raises two claims, first that the trial court failed to assess "prospectively" whether she could resume parental responsibilities within a reasonable time, and, second, that the TPR petition failed to provide adequate notice of the basis for termination. The State correctly notes, however, that mother's appeal was untimely, and that we therefore lack jurisdiction to consider it. See Turner v. Turner, 160 Vt. 646, 647 (mem.) ("This Court lacks jurisdiction of an appeal where notice is untimely filed."). Even if we were to address the claims, however, we would conclude that they lack merit for the reasons set forth above in rejecting father's nearly identical arguments. In particular, we would reject mother's claim that the court failed to look prospectively when it analyzed her likelihood of resuming parental duties within a reasonable period of time. As with father, the court considered past and then-present circumstances in determining mother's future capacity to resume parental duties in a reasonable time. Moreover, the petition to terminate mother's parental rights, like the corresponding

---

[1] Father's written motion to dismiss was limited to the sufficiency of the TPR petition relating to B.T., and the State accordingly argues that the appeal is limited to that issue. We conclude, however, that the State's pleading was adequate as to all three of the minors.

4

petition directed at father, provided adequate notice to her of the grounds for termination.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice